**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MOHAMMAD YUSUF AMDANI BAI, <br><br> *Plaintiff*, <br><br> v. <br><br> MARCO RUBIO, in his official capacity as Secretary of the United States Department of State, *et al.*,[1] <br><br> *Defendants*. | No. 1:24-cv-03138-JMC |

**<u>DEFENDANTS' MOTION TO DISMISS</u>**

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d), Marco Rubio, Secretary of the U.S. Department of State, is substituted as a defendant in his official capacity for his predecessor, Antony J. Blinken.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 2

   I.    Section 353 .................................................................................................... 2

   II.   Plaintiff's Inclusion on the December 2023 Supplemental Report ................................ 4

   III.  Procedural History ......................................................................................... 5

LEGAL STANDARD ............................................................................................................ 6

ARGUMENT ....................................................................................................................... 6

   I.    Plaintiff has not identified a discrete agency duty that the State Department has failed to undertake. ............................................................................................................ 6

   II.   Plaintiff lacks standing to bring a vagueness challenge................................................ 8

   III.  Plaintiff has failed to state a vagueness challenge. ...................................................... 9

   IV.  Plaintiff has failed to state a claim pursuant to 5 U.S.C. § 555(b)................................ 11

   V.   Plaintiff has failed to state a procedural due process claim. ........................................ 12

     A.   Plaintiff has not alleged a deprivation of any protected interest in his ability to conduct business................................................................................................................. 13

     B.   Plaintiff has not alleged a deprivation of any protected interest in his reputation........ 15

     C.   Plaintiff has not claimed a deprivation of the right to travel. ..................................... 17

     D.   Plaintiff has been afforded sufficient process. .......................................................... 17

CONCLUSION .................................................................................................................... 19

**INTRODUCTION**

This case arises out of Plaintiff Mohammad Yusuf Amdani Bai's challenge to the U.S. Department of State's ("State Department") inclusion of Plaintiff on its annual report to Congress of foreign persons who have engaged in corruption or acts that undermine democracy in El Salvador, Guatemala, Honduras, and Nicaragua. Plaintiff, a non-U.S. citizen, brings sweeping claims alleging that his inclusion on the State Department's annual report violates the Constitution and the Administrative Procedure Act ("APA"). But Plaintiff misapprehends the facts, misinterprets the relevant law, and seeks relief that would far exceed the bounds of the APA.

Preliminarily, Plaintiff's complaint primarily alleges injury by virtue of the sanctions—in the form of visa and admissibility restrictions—that he believes are imposed upon him in connection with his inclusion on the State Department's annual report. Those sanctions, however, expired on December 27, 2023. Plaintiff is not currently subject to any visa or admissibility sanctions pursuant to the challenged statute—nor is any other individual.

In any event, nearly all of Plaintiff's claims and requested relief fail at the outset. Plaintiff requests that this Court grant him sweeping relief that has no basis in the APA. Plaintiff's vagueness challenge fails both because he lacks standing to assert it and because the statute is not, in fact, vague—much less is it vague in any way cognizable under the vagueness doctrine. Plaintiff also overreads 5 U.S.C. § 555(b) of the APA, which he argues entitles him to a hearing but which in actuality merely gives third parties a right of intervention in already *ongoing* hearings. And Plaintiff's procedural due process claim founders for lack of any cognizable liberty interest upon which Defendants have infringed.

Accordingly, this Court should dismiss Plaintiff's claims under the Due Process Clause, the vagueness doctrine, and 5 U.S.C. § 555(b); as well as Plaintiff's requests for injunctive relief

1

ordering Defendants to take affirmative action untethered to any legal obligation.

## BACKGROUND

### I.    Section 353

Congress passed Section 353 as part of the Consolidated Appropriations Act of 2021, Pub. L. No. 116–260 § 353, 134 Stat. 1182, 3129–31 (2020), on December 27, 2020.  Section 353 requires the President to submit an annual report to Congress identifying "foreign person[s] who the President determines to have knowingly engaged in actions that undermine democratic processes or institutions, or in significant corruption or obstruction of investigations into such acts of corruption in El Salvador, Guatemala, Honduras, and Nicaragua." 22 U.S.C. § 2277a(b).  The report, which includes the names of included individuals and the reason for their inclusion, is made public—with the exception of any classified portion of such report.  *See id*. § 2277a(g) (requiring publication in Federal Register).

Section 353 also provides that, for the first three years of its enactment, the President "shall impose" certain visa-related sanctions on each foreign person identified in the annual reports.  *Id.* § 2277a(c), (d); *see also id.* § 2277a(f).  The sanctions include inadmissibility to the United States, ineligibility for any future visas, and the revocation of any existing visas.  *See id*. § 2277a(d)(1).  Section 353 explicitly specifies, however, that "[t]he authority to impose sanctions . . . and any sanctions imposed pursuant to such authority, shall expire on" December 27, 2023. *Id.* § 2277a(f).[2]

---

[2]    That provision includes a minor drafting error.  The provision in full reads: "The authority to impose sanctions under *subsection (b)*, and any sanctions imposed pursuant to such authority, shall expire on the date that is 3 years after December 27, 2020." 22 U.S.C. § 2277a(f) (emphasis added).  But it is subsection (c), not subsection (b), that provides the President's obligation to impose sanctions.  *See id*. § 2277a(c).  Subsection (b), in contrast, provides the President's obligation to issue reports and defines the conduct for inclusion on such reports. *See id*. § 2277a(b).  Indeed, an annotated footnote to the provision notes that the subsection should instead cross-reference to subsection (c), not subsection (b).

On June 21, 2021, the President delegated his authority under Section 353 to the Secretary of State.  *See* Delegation of Certain Authorities and Functions Under Section 353 of the United States–Northern Triangle Enhanced Engagement Act, 86 Fed. Reg. 34,591 (June 21, 2021). Pursuant to Section 353 and its delegated authority, the State Department has issued annual reports—and occasional intervening updates—since July 1, 2021.[3]  For the foreign persons listed on the reports issued since 2021, those persons have not been listed in any subsequent reports or updates.  *See, e.g.*, *supra* note 2 (collecting all reports).

Given Section 353's explicit directive, however, the State Department has not imposed any sanctions pursuant to Section 353 since December 27, 2023, and has treated all preexisting sanction actions pursuant to Section 353 as no longer in effect.  *See* 22 U.S.C. § 2277a(f); *see also,*

---

[3]    The State Department published the first report online on July 1, 2021, *see* U.S. Dep't of State, *U.S. Releases Section 353 List of Corrupt and Undemocratic Actors for Guatemala, Honduras, and El Salvador* (July 1, 2021), https://2021-2025.state.gov/u-s-releases-section-353-list-of-corrupt-and-undemocratic-actors-for-guatemala-honduras-and-el-salvador/, then subsequently published the report in the Federal Register on July 8, 2021, *see Report to Congress Pursuant to Section 353(d)(1)(A) of the United States—Northern Triangle Enhanced Engagement Act*, 86 Fed. Reg. 36,174 (July 8, 2021) ("July 2021 Report").

The State Department has continued to publish each report in the Federal Register after first publishing it online.  *See, e.g.*, *Update on Report to Congress Pursuant to Section 353(d)(1)(A) of the United States—Northern Triangle Enhanced Engagement Act*, 86 Fed. Reg. 53,384 (Sept. 27, 2021) ("Sept. 2021 Report"); *Update on Report to Congress Pursuant to Section 353(d)(1)(A) of the United States—Northern Triangle Enhanced Engagement Act*, 87 Fed. Reg. 15,299 (Mar. 17, 2022) ("March 2022 Report"); *Report to Congress Pursuant to Section 353(d)(1)(A) of the United States—Northern Triangle Enhanced Engagement Act*, 87 Fed. Reg. 49,639 (Aug. 11, 2022) ("August 2022 Report"); *Report to Congress Pursuant to Section 353(d)(1)(A) of the United States—Northern Triangle Enhanced Engagement Act*, 88 Fed. Reg. 48,280 (July 26, 2023) ("July 2023 Report"); *Report to Congress Pursuant to Section 353(d)(1)(A) of the United States—Northern Triangle Enhanced Engagement Act*, 89 Fed. Reg. 1,621 (Jan. 10, 2024) ("Dec. 2023 Suppl. Report").

The most recent report has not yet been published in the Federal Register.  *See Report to Congress on Foreign Persons who have Knowingly Engaged in Actions that Undermine Democratic Processes or Institutions in El Salvador, Guatemala, Honduras and Nicaragua* (Dec. 2024), https://www.state.gov/wp-content/uploads/2024/12/2024-Annual-353-Report.pdf ("Dec. 2024 Report").

*e.g.*, Congr. Res. Serv., *Central America: Policy Options Following Expiration of Targeted Sanctions Authority* (updated Oct. 1, 2024), https://crsreports.congress.gov/product/pdf/IF/IF12486 ("On December 27, 2023, a targeted sanctions authority created by Congress to respond to corruption and democratic backsliding in four Central American countries [*i.e.*, sanctions pursuant to Section 353] expired along with any visa restrictions that the State Department had imposed pursuant to the authority."). Indeed, all Section 353 reports issued prior to December 27, 2023, explicitly noted that foreign persons listed therein "are generally ineligible for visas and admission to the United States." July 2021 Report, 86 Fed. Reg. at 36,174; *see also* Sept. 2021 Report, 86 Fed. Reg. at 53,384; March 2022 Report, 87 Fed. Reg. at 15,299; August 2022 Report, 87 Fed. Reg. at 49,640; July 2023 Report, 88 Fed. Reg. at 48,281; Dec. 2023 Suppl. Report, 89 Fed. Reg. at 1621. In contrast, the December 2024 Report—the only report yet issued after the expiration of the sanctions—makes no mention of visa or admission eligibility, *see generally* Dec. 2024 Report.

## II.    Plaintiff's Inclusion on the December 2023 Supplemental Report

The State Department published the supplemental update to the 2023 Report on December 21, 2023. *See* U.S. Dep't of State, *New Listings Under the Section 353 Corrupt and Undemocratic Actors Report* (Dec. 21, 2023), https://2021-2025.state.gov/new-listings-under-the-section-353-corrupt-and-undemocratic-actors-report (online publication); *see also* Dec. 2023 Suppl. Report, 89 Fed. Reg. at 1621 (Federal Register publication). The State Department included Plaintiff on that report for "engag[ing] in significant corruption by bribing Honduran Supreme Court officials to rule in favor of his business in a private lawsuit." Dec. 2023 Suppl. Report, 89 Fed. Reg. at 1622. Because Section 353's sanctions expired on December 27, 2023, however, Plaintiff was subject to visa restrictions pursuant to Section 353 for only a week. *See* 22 U.S.C. § 2277a(f). Plaintiff is

not currently subject to any visa or admissibility restrictions pursuant to Section 353—nor is any other individual.

Plaintiff alleges that on August 2, 2024, he submitted to the State Department "an application for rescission of his designation." Am. Compl. ¶ 41, ECF No. 10. Plaintiff further claims that on September 30, 2024, he submitted "a supplemental letter" via email to the State Department detailing additional information related to the Honduran litigation referenced in the December 2023 Supplemental Report as the basis for his inclusion. *Id.* ¶ 42; *see also id.* ¶¶ 43–44 (describing that additional information). Plaintiff asserts that he has received no response. *See id.* ¶ 42.

### III.    Procedural History

Plaintiff filed the complaint on November 5, 2024, ECF No. 1, and an amended complaint on November 29, 2024, ECF No. 10, against the State Department and Antony J. Blinken, in his official capacity as then-Secretary of State. Plaintiff argues that Defendants violated the APA by including him on the December 2023 Supplemental Report because he did not engage in bribery or in significant corruption; that Defendants violated his Fifth Amendment due process rights by including him on the December 2023 Supplemental Report without notice or opportunity to be heard; that Section 353 is void for vagueness; and that Defendants violated 5 U.S.C. § 555(b) of the APA by failing to provide a process for redress for his inclusion on the December 2023 Supplemental Report. *See id.* ¶¶ 55, 59, 67–68, 73–74.

Plaintiff seeks declaratory and injunctive relief including: an order directing Defendants "to issue a written, reasoned decision on Plaintiff's pending delisting petition"; an order setting aside "Defendants' actions" and directing Defendants "to rescind [Plaintiff's] designation under Section 353"; an order declaring Section 353 void for vagueness; and an order directing the State

Department "to issue a public statement rescinding [Plaintiff's] designation." *Id.*, Requested Relief ¶¶ 80–81, 83.

## LEGAL STANDARD

Courts should dismiss claims under Federal Rule of Civil Procedure 12(b)(1) where they lack subject-matter jurisdiction to adjudicate the claims. In a Rule 12(b)(1) challenge, plaintiffs generally "bear[] the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (quoting *Didban v. Pompeo*, 435 F. Supp. 3d 168, 172–73 (D.D.C. 2020)). When considering a motion to dismiss pursuant to Rule 12b(b)(1), "[a] federal court may take judicial notice of 'a fact that is not subject to reasonable dispute'" if the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Hurd v. Dist. of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017) (quoting Fed. R. Evid. 201(b)). Courts should dismiss claims under Federal Rule of Civil Procedure 12(b)(6) when plaintiffs have failed to plead "sufficient factual matter" that, if "accepted as true," would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## ARGUMENT

**I.**     **Plaintiff has not identified a discrete agency duty that the State Department has failed to undertake.**

Plaintiff improperly seeks to compel Defendants to engage in action that Defendants are not legally required to undertake. "[T]he only agency action that can be compelled under the APA is action legally *required*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004). Thus, "[i]f a complaint that contains a claim brought under § 706(1) fails to identify a discrete and mandatory agency duty, the court must grant the defendant's Rule 12(b)(6) motion and dismiss the claim."

*Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 21 (D.D.C. 2017).[4]

Two of Plaintiff's requested forms of relief are improper because Plaintiff fails to identify any legal requirement that the State Department failed to undertake. *See id.* First, Plaintiff requests an order "[d]irect[ing] the State Department to issue a public statement rescinding [Plaintiff's] designation [in the 2023 Report Update]." Am. Compl., Requested Relief ¶ 83. But Plaintiff points to no legal authority requiring the State Department to issue a statement of any sort beyond the report itself, public or otherwise. Nor, indeed, has the State Department ever issued a statement "rescinding" the listing of any individual from a Section 353 report or any other, similar mandatory report.

Second, Plaintiff's request for this Court to compel Defendants "to issue a written, reasoned decision on Plaintiff's pending delisting petition," fails for the same reason. *Id.* ¶ 81. Plaintiff points to no legal authority requiring Defendants to issue a written decision on his "delisting petition," *id.* ¶ 81, nor are Defendants aware of any. Plaintiff's citation to 5 U.S.C. § 555(b) does not provide such legal authority. *See id.* ¶¶ 76–79. As explained below, *see infra* pp. 11–12, § 555(b) does not create entitlement to a hearing or even to a determination on a petition for review, *see Block v. SEC*, 50 F.3d 1078, 1085 (D.C. Cir. 1995) (rejecting argument that § 555(b) compelled SEC to issue determination on plaintiff's petition for review). Rather, it merely provides a limited right of intervention to interested third parties with respect to ongoing proceedings. *See id.* Thus, Plaintiff has no basis to ask this Court to compel Defendants to issue a written response to his "delisting petition." Am. Compl., Requested Relief ¶ 81.

---

[4]    Plaintiff does not bring an APA claim under § 706(1) to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Instead, Plaintiff references only 5 U.S.C. § 706(2), *see generally* Am. Compl., which allows courts to "hold unlawful and set aside" certain agency action, 5 U.S.C. § 706(2).

Accordingly, the Court should dismiss Plaintiff's requests for relief in the form of an order "to issue a written, reasoned decision on Plaintiff's pending delisting petition," *id.*, or to "[d]irect the State Department to issue a public statement rescinding [Plaintiff's] designation [in the 2023 Report Update]," *id.* ¶ 83.

**II.    Plaintiff lacks standing to bring a vagueness challenge.**

Plaintiff's vagueness challenge fails on the merits for an abundance of reasons, as set forth below, *see infra* pp. 9–11, but that claim also fails at the outset for lack of standing—in particular, lack of redressability. "Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Hecate Energy LLC v. Fed. Energy Regul. Comm'n*, ---F.4th---, 2025 WL 249062, at *4 (D.C. Cir. Jan. 21, 2025).

Here, voiding Section 353 for vagueness would not redress Plaintiff's sole alleged injury of reputational harm. *See, e.g.*, Am. Compl. ¶ 10 (alleging that reputational harm "interferes" with his business opportunities). In other words, "a decision from the Court endorsing Plaintiff['s] position would do nothing to contradict the factual basis of State's public assessment that [Plaintiff has] been involved with significant corruption." *Rahmani v. Yellen*, No. 24-cv-0285-RC, 2024 WL 1701681, at *13 (D.D.C. Apr. 19, 2024) (holding plaintiffs lacked standing to bring statutory-authority challenge to their designations under Section 7031(c), a statute imposing visa restrictions for significant corruption). Because Plaintiff alleges only reputational injury from his inclusion, an order delisting Plaintiff due to an issue of mere statutory construction would not remedy that injury. *See id.*; *see also McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S.*, 264 F.3d 52, 57 (D.C. Cir. 2001) (explaining that plaintiff lacked standing to seek an order declaring that Judicial Council and Review Committee "performed acts reserved by

the Constitution to the House and a two-thirds majority of the Senate" because that would not redress his sole alleged harm of reputational injury). Accordingly, Plaintiff lacks standing to bring a vagueness challenge.

### III.    Plaintiff has failed to state a vagueness challenge.

In any event, Plaintiff stretches the void-for-vagueness doctrine beyond its limits. "[A] statute or regulation is considered unconstitutionally vague only if, 'applying the rules for interpreting legal texts, its meaning specifies no standard of conduct at all.'"[5] *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 773 (D.C. Cir. 2022) (quoting *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017)). Thus, "[t]he key question . . . is whether [Section 353] 'provides a discernable standard when legally construed." *Id.* (quoting *Bronstein*, 849 F.3d at 1107). After all, "[e]ven trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid." *Bronstein*, 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975)).

Section 353 provides a discernable standard. Plaintiff argues that it is unclear whether the sanctions expired on December 27, 2023. *See* Am. Compl. ¶ 74. But Section 353 is explicit on that point—the statute provides that the President's "authority to impose sanctions" and "any sanctions imposed pursuant to such authority" expire three years after the date of enactment, namely, on December 27, 2023. 22 U.S.C. § 2277a(f). That the statute cross-references to the President's obligation to submit reports and the definition of the targeted conduct, rather than to

---

[5]    The Supreme Court has long recognized that the vagueness doctrine applies more loosely in the context of civil penalties relative to criminal penalties, as here. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982) ("The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. . . . The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.").

the President's obligation to impose sanctions, does not change the statute's plain reference to "sanctions." *Id.* The statute explicitly defines "sanctions" as the ineligibility for visa and admission to the United States, and the revocation of any existing visas. *See id.* § 2277a(d). Those "sanctions" expired on December 27, 2023. *See id.* § 2277a(f).

Moreover, Plaintiff's challenge does not implicate the concerns underlying the vagueness doctrine. A statute violates the Fifth Amendment when it is either "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). The vagueness doctrine is thus animated by "twin concerns": "providing notice and preventing arbitrary enforcement." *Beckles v. United States*, 580 U.S. 256, 265 (2017). Neither concern is implicated here.

First, Plaintiff does not—and cannot—argue that Section 353 fails to provide fair notice of the conduct it targets. Section 353 clearly targets the "knowing[] engage[ment] in actions that undermine democratic processes or institutions, or in significant corruption or obstruction of investigations into such acts of corruption in El Salvador, Guatemala, Honduras, and Nicaragua," and Section 353 specifies that such conduct includes "[c]orruption related to government contracts," "[b]ribery and extortion," "[t]he facilitation or transfer of the proceeds of corruption, including through money laundering," and "[a]cts of violence, harassment, or intimidation directed at governmental and nongovernmental corruption investigators." 22 U.S.C. § 2277a(b). Plaintiff's complaint takes no issue with this language.

Second, Plaintiff does not—and cannot—argue that Section 353 is "so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595. A statute is impermissibly "standardless" if it leaves the decisionmaker free "to prescribe the sentences or sentencing range available." *Beckles*, 580 U.S. at 262, 266. But Plaintiff does not argue that Section 353 leaves the

State Department "free to decide" whether or how to impose sanctions.  And indeed, Section 353 does not allow for any discretion in whether or how to impose sanctions (during the prescribed time period): "[t]he President *shall impose* the sanctions described in subsection (d) with respect to each foreign person identified in the report required under subsection (b)."  22 U.S.C. § 2277a(c) (emphasis added).  Section 353 thus does not implicate the vagueness doctrine's concern with arbitrary enforcement.  Accordingly, if the Court does not dismiss Plaintiff's vagueness challenge for lack of standing, Plaintiff's vagueness challenge must be dismissed for failure to state a claim.

**IV.    Plaintiff has failed to state a claim pursuant to 5 U.S.C. § 555(b).**

Plaintiff's improper interpretation of 5 U.S.C. § 555(b) attempts to impose procedural requirements beyond that of the APA.  Plaintiff asserts that § 555(b) requires Defendants to provide Plaintiff with an "appearance" to "review and consider the evidence" related to his inclusion on the December 2023 Supplemental Report.  Am. Compl. ¶¶ 78–79; *see also* 5 U.S.C. § 555(b) ("[A]n interested person may appear before an agency . . . in a proceeding . . . in connection with an agency function.").  But § 555(b) does not require agencies to hold a proceeding.  Rather, § 555(b) provides a limited right of intervention to interested parties with respect to *ongoing* proceedings.  *See Block*, 50 F.3d at 1085 ("[Section] 555(b) is universally understood to establish the right of an interested person to participate in an on-going agency proceeding."); *see also, e.g.*, *SourceAmerica v. U.S. Dep't of Educ.*, No. 1:17-cv-893, 2018 WL 1453242, at *6 (E.D. Va. Mar. 23, 2018) ("Those decisions that have dealt with claims under § 555(b) have generally held that the provision provides interested parties with a limited right of intervention.").  Because there is no ongoing proceeding here, § 555(b) is irrelevant.

Plaintiff's demand for a hearing is thus an improper attempt to impose "specific procedural requirements that have no basis in the APA."  *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S.

11

633, 654 (1990). The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness," *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009), and for informal administrative adjudications such as this, the "[g]overning procedural rules" are "few." *Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010). In particular, the APA does not require agencies to hold hearings for informal adjudications. *See New Life Evangelistic Ctr., Inc. v. Sebelius*, 753 F. Supp. 2d 103, 117 (D.D.C. 2010) ("[T]he APA does not confer upon participants in informal adjudications the right to 'present his case or defense by oral or documentary evidence, to submit rebuttal evidence, [or] to conduct such cross-examination as may be required for a full and true disclosure of the facts.'" (quoting 5 U.S.C. § 556(d))); *Seafarers Int'l Union of N. Am. v. United States*, 891 F. Supp. 641, 645 n.5 (D.D.C. 1995), *aff'd sub nom. Clifford v. Pena*, 77 F.3d 1414 (D.C. Cir. 1996) (rejecting argument that hearing was required in informal adjudication). The APA thus does not entitle Plaintiff to an "appearance" to "review and consider the evidence" related to his inclusion on the December 2023 Supplemental Report. Am. Compl. ¶¶ 78–79. Nor does the APA entitle Plaintiff to an agency appeal of the State Department's decision in the form of an "application for reconsideration." *Id*. ¶ 68; *see also Block*, 50 F.3d at 1085 (rejecting similar argument as to plaintiff's petition for review of SEC decision). Accordingly, Plaintiff fails to state a claim under § 555(b).

V.    **Plaintiff has failed to state a procedural due process claim.**

To demonstrate a denial of due process, a plaintiff must show (1) a cognizable liberty interest; (2) the deprivation of that interest by government action; and (3) that the procedures employed were constitutionally inadequate. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Plaintiff asserts that Defendants have infringed upon his liberty interests by (1) "preventing him from . . . engaging in business and business development in the United States,"

(2) "damaging his reputation," and (3) "preventing him from living and traveling freely . . . in the United States." Am. Compl. ¶ 66. None of these liberty-interest theories withstand scrutiny; and regardless, the available procedures are constitutionally adequate.[6]

### A. Plaintiff has not alleged a deprivation of any protected interest in his ability to conduct business.

Plaintiff fails to establish that Defendants have infringed on any protected interest in "engaging in business." *Id.* While the Supreme Court has recognized "some generalized due process right to choose one's field of private employment," that right is "subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999). To "rise to the level of a violation," government action must result in "a complete prohibition of the right to engage in a calling." *Id.* at 292; *see also Hu v. City of N.Y.*, 927 F.3d 81, 102 (2d Cir. 2019) ("[T]he right of occupational choice is afforded Due Process protection only when a plaintiff is completely prohibited from engaging in his or her chosen profession." (cleaned up)). Thus, "[t]he 'loss of *some* employment opportunities does not amount to an alteration of a legal right.'" *Garcia v. Pompeo*, No. 1:18-cv-01822-APM, 2020 WL 134865, at *7 (D.D.C. Jan. 13, 2020) (quoting *U.S. Info. Agency v. Krc*, 905 F.2d 389, 397 (D.C. Cir. 1990)) (emphasis added).

Plaintiff makes only vague, conclusory allegations about how his inclusion on the Section 353 Report has harmed his business. Notably, the majority of Plaintiff's allegations of business

---

[6]     Plaintiff is a non-citizen and is therefore entitled to constitutional protections only if he can establish that he has substantial contacts with the United States. *See Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004) ("The Supreme Court has long held that non-resident aliens who have insufficient contacts with the United States are not entitled to Fifth Amendment protections."). "The D.C. Circuit has no test to determine what degree of connection to the United States counts as 'substantial.'" *Ranjan v. DHS*, No. CV 23-2453, 2024 WL 3835355, at *5 (D.D.C. Aug. 15, 2024) (quoting *Bazzi v. Gacki*, 468 F. Supp. 3d 70, 77 (D.D.C. 2020)). Defendants do not concede that Plaintiff has established substantial connections. Regardless, Plaintiff's due process claims fail for the reasons explained above.

harm stem *not* from his mere inclusion on the December 2023 Supplemental Report, but rather from his inaccurate assumption that he is subject to visa and admissibility restrictions pursuant to Section 353. *See, e.g.*, Am. Compl. ¶ 66 (alleging that his inclusion in the 2023 Report Update has "effectively prevent[ed] him from living and traveling freely . . . in the United States as well as engaging in business and business development in the United States"); *id.* ¶ 69 (alleging that Plaintiff "suffer[s] from the effect of the sanctions on his personal life and his business"); *id.* ¶ 75 (alleging that Plaintiff has been subject to ambiguity regarding his "ability to enter the country where . . . he maintains a residence and significant personal and business contacts"). As explained, Plaintiff is not subject to any visa or admissibility restrictions pursuant to Section 353, as those restrictions have expired. These allegations thus cannot support a due process claim.

To the extent Plaintiff alleges any business harm stemming from his mere inclusion on the December 2023 Supplemental Report, such allegations are largely bare and conclusory. *See, e.g.*, *id.* ¶ 7 (alleging "serious . . . professional consequences" from his inclusion in the 2023 Report Update); *id.* ¶ 10 (alleging that his inclusion in the 2023 Report Update is "a smear that interferes with [his] ability to conduct business, whether through GK Global or any other company"). Plaintiff alleges only a single concrete example: that a project in McKinney, Texas was allegedly "suspended due to [his] designation." *Id.* ¶ 15. But Plaintiff pleads no facts indicating whether the project was suspended based on the visa and admissibility restrictions imposed upon him, or due to his mere inclusion on the December 2023 Supplemental Report. And if the project was suspended based on the visa and admissibility restrictions, rather than based on his inclusion on the December 2023 Supplemental Report standing alone, then any claims stemming from the suspension are moot given that those restrictions have expired.

Regardless, the suspension of a single project falls far short of establishing "a complete

prohibition" of Plaintiff's chosen profession. *Conn*, 526 U.S. at 291–92. Plaintiff does not allege, for example, that Defendants have barred his "entry into a particular profession," or that Defendants "seek[] to permanently bar [him] from public employment." *ABA, Inc. v. Dist. of Columbia*, 40 F. Supp. 3d 153, 167 (D.D.C. 2014). Indeed, Plaintiff explicitly alleges that his business—which is headquartered outside the United States, in San Pedro Sula, Honduras—continues to operate. *See* Am. Compl. ¶ 2. Plaintiff has thus failed to allege that Defendants have infringed upon any protected interest in "engaging in business." *Id.* ¶ 66.

### B. Plaintiff has not alleged a deprivation of any protected interest in his reputation.

Plaintiff fails to establish a due process claim premised on reputational injury for similar reasons. Because "injury to reputation by itself [is] not a 'liberty' interest protected under the [Due Process Clause]," *Siegert v. Gilley*, 500 U.S. 226, 233 (1991), the Supreme Court has formulated a heightened standard to determine whether alleged reputational harm infringes a liberty interest. *See Paul v. Davis*, 424 U.S. 693, 711 (1976); *see also Mosrie v. Barry*, 718 F.2d 1151, 1158 (D.C. Cir. 1983) (reputational harm "does not deprive [an individual] of a fifth amendment liberty" defamation merely because it may be "hurtful to [the plaintiffs'] prestige, reputation and *earning power*" (quoting *Paul*, 424 U.S. at 704)). Even assuming Plaintiff has alleged some reputational harm from his inclusion on the December 2023 Supplemental Report, Plaintiff has failed to allege a cognizable due process claim based on such harm.

The D.C. Circuit has provided two legal theories through which to establish a due process violation based on reputational harm. *See O'Donnell v. Barry*, 148 F.3d 1126, 1139–40 (D.C. Cir. 1998). Both tests require the plaintiff to establish not only reputational harm as a result of government conduct, but also a "plus" factor that brings the claim within the ambit of the Due Process Clause. First, under the "reputation-plus" test, a plaintiff must establish "official

15

defamation" in conjunction with "*the violation of a 'right or status previously recognized by state law.*'" *Khalid v. Garland*, No. 1:21-cv-02307-CRC, 2023 WL 2561943, at *4 (D.D.C. Mar. 16, 2023) (quoting *O'Donnell*, 148 F.3d at 1139–40) (emphasis added), *denying mot. to amend*, 2023 WL 8600506 (D.D.C. May 25, 2023).  Second, the "stigma-plus" test requires a plaintiff to establish "'a continuing stigma or other disability arising from official action' *that foreclosed the plaintiff from other recognized rights*." *Id*. (quoting *Garcia*, 2020 WL 134865, at *6) (emphasis added).

Plaintiff does not specify which theory he pursues, but his claim fails regardless because he has failed to allege a "plus" factor.  Plaintiff alleges broadly that his inclusion on the December 2023 Supplemental Report has harmed his reputation.  But Plaintiff fails to allege that any reputational harm stemming from his inclusion on the December 2023 Supplemental Report has "alter[ed] or extinguishe[d] 'a right or status previously recognized by state law.'" *Id.* (quoting *Paul*, 424 U.S. at 711); *see also, e.g.*, *Mosrie*, 718 F.2d at 1159 ("Since reputation alone does not constitute a liberty interest, we must ask whether appellees' actions deprived appellant of some other interest that rises to constitutional status.").  Plaintiff's allegations related to lost business opportunities fall far short of establishing a "plus" factor for all the reasons explained above, including that Plaintiff fails to allege that Defendants have completely prohibited him from pursuing his chosen business.  *See supra* pp. 13–15; *see also, e.g. Garcia*, 2020 WL 134865, at *7 ("[T]he 'loss of *some* employment opportunities does not amount to an alteration of a legal right.'" (quoting *U.S. Info. Agency*, 905 F.2d at 397) (emphasis added)).  Plaintiff alleges no other possible "plus" factor and has thus failed to allege a reputational injury sufficient to establish a due process claim.

**C.  Plaintiff has not claimed a deprivation of the right to travel.**

Plaintiff cannot establish that Defendants have infringed on any protected interest in travel because the visa and admissibility restrictions have expired and Plaintiff points to no other past or ongoing limitation on his ability to travel, including any limitation on his ability to apply for a visa.  Thus, any such claim is now moot.  *See Larsen v. U.S. Navy*, 525 F.3d 1, 3–4 (D.C. Cir. 2008) ("[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." (quoting *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979))).

**D.  Plaintiff has been afforded sufficient process.**

Even if Plaintiff had identified any constitutionally protected liberty interests implicated by his inclusion on the December 2023 Supplemental Report—which he has not—he has been afforded constitutionally adequate procedures to protect such interests.  In evaluating the constitutional adequacy of procedures, courts balance "the private interest," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest."  *Gilbert v. Homar*, 520 U.S. 924, 931–32 (1997) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "It is by now well established that 'due process,' . . . is not a technical conception with a fixed content unrelated to time, place[,] and circumstances."  *Id.* at 930 (citation omitted).  Instead, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrisey v. Bremer*, 408 U.S. 471, 481 (1972).

As explained above, even if Plaintiff had identified any constitutionally protected interests, that interest is quite limited.  *See supra* pp. 13–17 (explaining that Plaintiff has failed to allege the deprivation of any liberty interest).  In contrast, the State Department's inclusion of Plaintiff on the December 2023 Supplemental Report implicates important governmental interests in foreign

17

relations.  *See Haig v. Agee*, 453 U.S. 280, 307 (1981) ("Protection of the foreign policy of the United States is a governmental interest of great importance . . . .").  Congress explicitly passed Section 353 in recognition that corruption in El Salvador, Guatemala, Honduras, and Nicaragua[7] "significantly damages the economies of such countries and deprives citizens of opportunities." 22 U.S.C. § 2277a(a)(1).  And as the Supreme Court has repeatedly emphasized, "[m]atters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention."  *Haig*, 453 U.S. at 292; *see also Oetjen v. Cent. Leather Co.,* 246 U.S. 297, 302 (1918) ("The conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative—'the political'—departments of the government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision.").

Nonetheless, through its public notice, the State Department notified Plaintiff of his inclusion in the December 2023 Supplemental Report and of the reasons for such inclusion.  *See* Dec. 2023 Suppl. Report, 89 Fed. Reg. at 1622.  Moreover, Plaintiff has availed himself of the opportunity to provide information to the State Department, including "the submission of a detailed petition." Am. Compl.  ¶ 17.  While the State Department has considered the information provided, the State Department has no obligation to provide Plaintiff with additional reasoning for his inclusion.  This is for good reason.  The inclusion of individuals on Section 353 reports often implicates sensitive or classified information, the disclosure of which could result in significant harm to national security.  *See Olenga v. Gacki*, 507 F. Supp. 3d 260, 276 (D.D.C. 2020) (emphasizing "the primacy of the Executive in controlling and exercising responsibility over

---

[7]     Congress added Nicaragua to that list in 2021.  *See* Reinforcing Nicaragua's Adherence to Conditions for Electoral Reform Act of 2021, Pub. L. No. 117-54, 135 Stat. 413, 418.

access to classified information, and the Executive's compelling interest in withholding national security information from unauthorized persons in the course of executive business" (quoting *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 163–64 (D.C. Cir. 2003))); *Haig*, 453 U.S. at 307 ("[T]he Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." (quoting *Snepp v. United States*, 444 U.S. 507, 509, n.3 (1980))). Indeed, Congress explicitly recognized that Section 353 reports could include classified information as part of a classified annex. *See* 22 U.S.C. § 2277a(g) (referring to "[t]he unclassified portion of the report").

On balance, therefore, the harm to national security efforts caused by providing additional information far outweighs the alleged entitlement to more process for persons who are merely subject to inclusion on a public list that no longer carries any sanctions.

## CONCLUSION

Accordingly, this Court should dismiss Count III (Procedural Due Process), Count IV (Vagueness), and Count V (5 U.S.C. § 555(b)); as well as Plaintiff's request for injunctive relief "[o]rder[ing] Defendants to issue a written, reasoned decision on Plaintiff's pending delisting petition" and "[d]irect[ing] the State Department to issue a public statement rescinding [Plaintiff's] designation." Am. Compl., Requested Relief ¶¶ 81, 83.

Dated: February 4, 2025

BRETT A. SHUMATE
Deputy Assistant Attorney General

STEPHEN M. ELLIOTT
Assistant Director

/s/ *Cassandra M. Snyder*
Cassandra M. Snyder

19

D.C. Bar #1671667
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 451-7729
Fax: (202) 616-8460
Email: Cassandra.M.Synder@usdoj.gov

*Counsel for Defendants*

20

## <u>CERTIFICATE OF SERVICE</u>

On February 4, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, District of Columbia, using the electronic case filing system of the court.

<u>/s/ *Cassandra Snyder*</u>
Cassandra Snyder