## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**MOHAMMAD YUSUF AMDANI BAI**

   *Plaintiff,*

**V.**

**MARCO RUBIO, in his official capacity as Secretary of the United States Department of State,** *et al*.

   *Defendants.*

**CASE NO. 1:24-CV-03138-JMC**
**ORAL ARGUMENT REQUESTED**

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

LEGAL STANDARD ...................................................................................................................... 4

ARGUMENT ................................................................................................................................... 4

    I.   Section 353 Is Void for Vagueness.................................................................................. 4

       A. The Amended Complaint Adequately Alleges Vagueness. ......................................... 5

       B. Mr. Amdani Has Standing to Bring a Vagueness Claim. ............................................ 8

    II.  Mr. Amdani Has Properly Pled a Violation of Procedural Due Process. ........................ 11

       A. Mr. Amdani Is Entitled to Protection Under the Constitution. ................................... 11

       B. Mr. Amdani Has Sufficiently Pled a Cognizable Liberty Interest. ............................. 13

           i.  Mr. Amdani Has Satisfied the "Stigma Plus" Test for Pleading a Liberty
               Interest Because He Can Show Broad Preclusion from His Profession. ........... 13

           ii.  The Revocation of Mr. Amdani's Visa Is a Denial of a Previously Held
               Right or Status Under the Law, Which Also Implicates Due Process............... 16

       C. Defendants Have Not Provided Any Process, Let Alone Constitutionally
          Adequate Process. ...................................................................................................... 17

    III. Mr. Amdani's Requested Forms of Relief Are Proper. ................................................... 20

    IV. Defendants Concede They Engaged in Decision-making After Mr. Amdani's
       Submissions to the State Department. ............................................................................. 20

CONCLUSION.............................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
  526 U.S. 40 (1999) ................................................................................................................11

*Am. Nat. Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011) ..............................................................................................4

*Armstrong v. D.C. Pub. Libr.*,
  154 F. Supp. 2d 67 (D.C. Cir. 2001) .......................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................4

*Bell v. Burson*,
  402 U.S. 535 (1971) ...............................................................................................................16

*Black v. Romano*,
  471 U.S. 606 (1985) (Marshall, J., concurring) .....................................................................19

*Carolina Youth Action Project v. Wilson*,
  60 F.4th 770 (4th Cir. 2023) .................................................................................................11

*Doe v. U.S. Dep't of Just.*,
  753 F.2d 1092 (D.C. Cir. 1985) .......................................................................................13, 15

*Ersek v. Township of Springfield*,
  102 F.3d 79 (3d Cir. 1996) ......................................................................................................9

*Evans v. Chalmers*,
  703 F.3d 636 (4th Cir. 2012) ................................................................................................16

*FCC v. Fox Television Stations*,
  567 U.S. 239 (2012) ......................................................................................................4, 5, 10

*Garcia v. Pompeo*,
  No. 1:18-CV-01822 (APM), 2020 WL 134865 (D.D.C. Jan. 13, 2020) ................................13

*Goss v. Lopez*,
  419 U.S. 565 (1975) ...........................................................................................................16, 17

*Greene v. McElroy*,
  360 U.S. 474 (1959) ...............................................................................................................14

*Hecate Energy LLC v. FERC*,
126 F.4th 660 (2025) ............................................................................................8, 9

*Hoeg v. Newsom*,
652 F. Supp. 3d 1172 (E.D. Cal. 2023) ..........................................................................6

*Holman v. Williams*,
436 F. Supp. 2d 68 (D.D.C. 2006) ..............................................................................14

*Jifry v. F.A.A.*,
370 F.3d 1174 (D.C. Cir. 2004) ..................................................................................11

*Kartseva v. Dep't of State*,
37 F.3d 1524 (D.C. Cir. 1994) ....................................................................................13

*Khalid v. Garland*,
No. 1:21-cv-02307 (CRC), 2023 WL 2561943 (D.D.C. Mar. 16, 2023) ................16

*Kolender v. Lawson*,
461 U.S. 352 (1983) ......................................................................................................3

*Lamie v. U.S. Trustee*,
540 U.S. 526 (2004) ......................................................................................................8

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ......................................................................................................7

*Lopez v. Williams*,
372 F. Supp. 1279 (S.D. Ohio 1973) ..........................................................................20

*Lopez Bello v. Smith*,
651 F. Supp. 3d 20 (D.D.C. 2022) ..............................................................................12

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ......................................................................................17, 18, 19

*McGinnis v. District of Columbia*,
65 F. Supp. 3d 203 (D.D.C. 2014) ..............................................................................15

*Moore v. Philips*,
No. 04 Civ. 8908(DLC), 2006 WL 1006538 (S.D.N.Y. Apr. 18, 2006) ................11

*Morrissey v. Brewer*,
408 U.S. 471 (1972) ....................................................................................................20

*Mosrie v. Barry*,
718 F.2d 1151 (D.C. Cir. 1983) ..................................................................................16

*Motor Vehicles Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co.*,
  463 U.S. 29 (1983) ..................................................................................................21

*Narragansett Indian Tribal Historic Pres. Off. v. FERC*,
  949 F.3d 8 (D.C. Cir. 2020) ....................................................................................10

*Nat'l Council of Resistance of Iran v. U.S. Dep't of State*,
  251 F.3d 192 (D.C. Cir. 2001) ................................................................................12

*O'Donnell v. Barry*,
  148 F.3d 1126 (D.C. Cir. 1998) .........................................................................15, 16

*Olenga v. Gacki*,
  507 F. Supp. 3d 260 (D.D.C. 2020) ........................................................................11

*Paul v. Davis*,
  424 U.S. 693 (1976) ...........................................................................................13, 16

*PDK Labs Inc. v. Ashcroft*,
  338 F. Supp. 2d 1 (D.D.C. 2004) ............................................................................14

*Rahmani v. Yellen*,
  No. 24-cv-0285 (RC), 2024 WL 1701681, (D.D.C. Apr. 19, 2024) ..........................9

*Ranjan v. U.S. Dep't of Homeland Sec.*,
  No. CV 23-2453 (LLA), 2024 WL 3835355 (D.D.C. Aug. 15, 2024) .....................12

*Sessions v. Dimaya*,
  584 U.S. 148 (2018) ...................................................................................................4

*Taylor v. Resol. Tr. Corp.*,
  56 F.3d 1497 (D.C. Cir.) .....................................................................................13, 14

*The Bd. of Regents of State Colls. v. Roth*,
  408 U.S. 564 (1972) ..................................................................................................13

*Thomas v. Principi*,
  394 F.3d 970 (D.C. Cir. 2005) ...................................................................................4

*United States ex rel. Totten v. Bombardier Corp.*,
  380 F.3d 488 (D.C. Cir. 2004) ...................................................................................8

*United States v. Bronstein*,
  849 F.3d 1101 (D.C. Cir. 2017) ..............................................................................5, 6

*Wisconsin v. Constantineau*,
  400 U.S. 433 (1971) ......................................................................................13, 16, 17

**Statutes**

5 U.S.C. § 500................................................................................................1

5 U.S.C. § 555................................................................................................20

5 U.S.C. § 706................................................................................................7

22 U.S.C. § 2277............................................................................... *passim*

**Other Authorities**

31 CFR § 501.807..........................................................................................19

*Central America: Policy Options Following Expiration of Targeted Sanctions
    Authority* (updated Oct. 1, 2024),
    https://crsreports.congress.gov/product/pdf/IF/IF12486.....................8

Corrupt and Undemocratic Actors Report (2023),
    https://www.state.gov/reports/section-353-corrupt-and-undemocratic-actors-
    report-2023/...........................................................................................1

Fed. R. Civ. P. 12(b)(6).................................................................................4

*Filing a Petition for Removal from an OFAC List*,
    https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-
    petition-for-removal-from-an-ofac-list .............................................19

*Frequently Asked Questions and Glossary*, https://uscode.house.gov/faq.xhtml ..........................7

Report to Congress Pursuant to the United States-Northern Triangle Enhanced
    Engagement Act, 89 Fed. Reg. 1621 (Jan. 9, 2024),
    https://www.federalregister.gov/documents/2024/01/10/2024-00346/report-to-
    congress-pursuant-to-the-united-states-northern-triangle-enhanced-
    engagement-act ....................................................................................5

*Vagueness*, *Black's Law Dictionary* (12th ed. 2024).....................................6

## INTRODUCTION

Employing an unintelligible statute, Defendants included Plaintiff Mohammad Yusuf Amdani Bai ("Mr. Amdani") on the Section 353[1] Report, thereby upending his life by publicly alleging that he bribed judges of the Supreme Court of Honduras (even though his business lost a judgment of $159 million in the Supreme Court, a fact not disputed at this stage by Defendants) and branding him as someone involved in "corruption" and the "underm[ining of] democratic processes." Tellingly, Defendants' Motion to Dismiss does not attempt to justify these charges in any way. Defendants do not even move to dismiss Counts I and II of the Amended Complaint, which allege, respectively, that Mr. Amdani's designation (i) is arbitrary and capricious in violation of the Administrative Procedure Act ("APA")[2] because it is factually implausible and (ii) exceeds the statutory authority allotted to the executive branch. Instead, Defendants' motion seeks to preserve a statute with undisputed textual errors and to justify their failure to respond to Mr. Amdani's attempts to contest the allegations.

At its core, Defendants' position is that Mr. Amdani has no liberty interest, despite his significant ties to the United States, and is therefore entitled to absolutely no process around his Section 353 designation. Yet, Mr. Amdani properly pled his right to Constitutional due process because the designation has deprived him of his (then active) visa, which is a legal status that he held pursuant to federal law, and also because of the devastating harm to his reputation, which has excluded him from a business he spent decades building and generally foreclosed him from business opportunities in the United States. While Defendants argue in the alternative that they

---

[1] 22 U.S.C. § 2277a(b); *see* U.S. Dep't of State, Section 353 Corrupt and Undemocratic Actors Report (2023), https://www.state.gov/reports/section-353-corrupt-and-undemocratic-actors-report-2023/ (hereinafter "Section 353").

[2] 5 U.S.C. § 500 *et seq.*

have afforded Mr. Amdani certain process, it is not clear how the procedures surrounding the Section 353 Report amount to *any* process, let alone due process as required by the Constitution.

Mr. Amdani received no opportunity to contest the allegations against him, either before or after his public designation.  Am. Compl. ¶ 67.  In the absence of any procedure, Mr. Amdani submitted an application to the State Department pointing out the inaccuracies of the designation, including the fact that, far from bribing the Supreme Court for a favorable decision as alleged, his business actually lost a $159 million judgment in the Supreme Court.  Rather than defend the designation, Defendants never acknowledged receipt of the petition despite multiple follow up requests.  Am. Compl. ¶¶ 41-42.  In their Motion to Dismiss, Defendants revealed (for the first time) that the State Department has in fact "considered the information provided" in Mr. Amdani's application but claim that they have no obligation to justify the designation.  Defs.' Mot. to Dismiss 18.

The failure to explain the designation is especially troubling given the fact that Section 353 is hopelessly confusing—so much so that Defendants' own understanding of the statute has shifted during the pendency of this litigation.  Specifically, as explained in the Amended Complaint, subsection (b) of Section 353 requires the President to issue an annual report identifying foreign persons who "knowingly engaged in . . . significant corruption."   22 U.S.C. § 2277a(b). Subsections (c) and (d) of the same statute require certain sanctions be imposed on those identified in subsection (b), including revocation of visas and ineligibility for admission to the United States. *Id*. at (c)-(d).  Section 353 also includes a sunset provision, which states the "authority to impose *sanctions* under *subsection (b)*, and any sanctions imposed pursuant to such authority, shall expire on [December 27, 2023]."  *Id*. at (f) (hereinafter "the sunset provision") (emphasis added).  But it is unclear from the statute exactly *what* sunset on December 27, 2023.  The sunset provision refers

only to subsection (b), the Presidential reporting requirement. The sanctions are contained in subsections (c) and (d), neither of which are referenced in the sunset provision.

Defendants dismiss this statutory ambiguity as a "minor drafting error," claiming, contrary to the plain language of the statute, that the sunset provision applies only to the subsection (c) sanctions governing travel. Defs.' Mot. to Dismiss 2 n.2. This was not clear to Mr. Amdani when he submitted his delisting petition. Am. Compl. ¶¶ 17, 41-42. It was also apparently unclear to Defendants, who never informed Mr. Amdani or his counsel that the visa restrictions had expired a week after he was designated. Defendants had a chance to explain their position to Mr. Amdani, as counsel met with two representatives of the State Department in June 2024, submitted the delisting petition in August 2024, and sent multiple follow-up communications between August 2024 and the filing of the complaint in November 2024.[3] Given their silence over this four month period, it appears that it was only when Mr. Amdani pointed out the ambiguity in the statute in his Amended Complaint that Defendants even realized that the "visa and admissibility restrictions have expired." Def.'s Mot. to Dismiss 17. This explanation of the statute appears to be little more than an 11th hour attempt to dismiss Mr. Amdani's claims as moot and highlights the statute's vagueness, an infirmity which, as the Supreme Court has held, creates the risk of arbitrary enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 358 (1983) ("[T]he more important aspect of the vagueness doctrine is . . . the requirement that a legislature establish minimal guidelines to govern law enforcement.") (internal quotation marks and citation omitted).

---

[3] Defendants had ample opportunity to make this clear to Mr. Amdani, as counsel met with two representatives of the State Department in June 2024, submitted the delisting petition in August 2024 and sent multiple follow-up communications between August 2024 and the filing of the complaint in November 2024.

Because of the incoherence of Section 353 and Defendants' failure to engage in meaningful dialogue with him, Mr. Amdani is caught in a Kafkaesque nightmare—uncertain (i) why he was sanctioned, (ii) how he can challenge the sanctions, and (iii) what his current status is. The Due Process Clause of the Constitution and the APA are intended to prevent such situations. Accordingly, Defendants' Motion to Dismiss should be denied in its entirety.

## LEGAL STANDARD

When deciding whether a complaint sufficiently alleges subject-matter jurisdiction, a court must assume all factual allegations in the complaint are true and grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Further, a plaintiff states a claim upon which relief can be granted when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As with subject-matter jurisdiction, a court evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must "draw on its judicial experience and common sense." *Id.* at 679.

## ARGUMENT

### I. Section 353 Is Void for Vagueness.

Section 353 is so poorly drafted as to render it nonsensical, thereby meriting a finding that it is void for vagueness. *See FCC v. Fox Television Stations*, 567 U.S. 239, 253 (2012). The application of the vagueness doctrine is not limited to criminal statutes, but rather those that are penal. *C.f.* Defs.' Mot. to Dismiss 9 n.5. The Supreme Court has recognized the doctrine applies in the immigration context because the consequences of removal from the United States "may be of greater concern . . . than any potential jail sentence." *Sessions v. Dimaya*, 584 U.S. 148, 150 (2018).

- 4 -

As explained, it is unclear what part of the statute sunset on December 27, 2023—the subsection (b) reporting requirement (as indicated by the plain language of the sunset provision) or the authority to impose travel restrictions contained in subsection (d)—or both. *See supra* at 5-6*; see also* Am. Compl. ¶¶ 6-7, 71-75. Section 353 therefore violates both of the "two connected . . . due process concerns" that animate the void for vagueness doctrine: "first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance . . . so that those enforcing the law do not act in an arbitrary or discriminatory way." *Fox*, 567 U.S. at 253.

### A.    The Amended Complaint Adequately Alleges Vagueness.

Mr. Amdani has adequately pled both a facial and an as-applied challenge to Section 353, because, in light of the ambiguity in the sunset provision, the statute is both facially unclear as to what the consequences of proscribed action will be and the "procedural history . . . shows" that all parties did not have "fair notice of what is prohibited." *Id.* Contrary to Defendants' suggestion, there is no "discernable standard" present in Section 353 to provide notice of what sanctions will be imposed or how long they will be enforced; the law is fundamentally unclear as to which provisions sunset and when.[4] *C.f.* Defs.' Mot. to Dismiss 9-11 (relying on *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017)). As this Circuit explained in *Bronstein*, a law is vague if its meaning "specifie[s] no standard of conduct at all." *Bronstein*, 849 F.3d at 1107. In

---

[4] Contrary to Defendants' current contention that the visa restrictions on Mr. Amdani expired on December 27, 2023, *see* Defs.' Mot. to Dismiss 1, 4, 10, 14, Mr. Amdani was sent an email on January 5, 2024, notifying him that his visa had been revoked—after the visa restrictions sunset under Defendants' current reading of Section 353. Moreover, the notification of the sanctions was published in the federal register on January 9, 2024, again, only after the visa restrictions sunset under Defendants' current reading of Section 353. Report to Congress Pursuant to the United States-Northern Triangle Enhanced Engagement Act, 89 Fed. Reg. 1621 (Jan. 9, 2024), https://www.federalregister.gov/documents/2024/01/10/2024-00346/report-to-congress-pursuant-to-the-united-states-northern-triangle-enhanced-engagement-act.

contrast to the statute at issue in *Bronstein*, which called for the application of a "qualitative standard . . . to real-world conduct," *id.* at 1108, here, the sunset provision of the statute is subject to two equally plausible interpretations with drastically different consequences for designated individuals and for the ongoing enforcement of the statute. Under one interpretation, the "name and shame" sanctions contained in subsection (b) sunset. Under the other interpretation, the visa and travel restrictions contained in subsection (d) sunset. 22 U.S.C. § 2277a; *see also* Am. Compl. ¶¶ 17, 41-42. As a result, an individual designated under Section 353, the designee's potential business partners and other third parties with whom he may interact, and State Department consular officers are in a hall of mirrors trying to determine what restrictions apply.

The statute's binary interpretative choice is of "uncertain breadth of meaning." *Vagueness*, *Black's Law Dictionary* (12th ed. 2024). As a result, it fails to provide "[e]xplicit guidelines in order to avoid arbitrary and discriminatory enforcement." *Armstrong v. D.C. Pub. Libr.*, 154 F. Supp. 2d 67, 81 (D.C. Cir. 2001) (internal quotation marks and citation omitted). *Hoeg v. Newsom* is instructive. 652 F. Supp. 3d 1172 (E.D. Cal. 2023). In that case, two "equally plausible (or perhaps implausible)" interpretations were possible under the terms of a statute as written. *Id.* at 1189-90. The Court declined to "adopt[] defendants' interpretation" because adopting that interpretation would not resolve the fundamental uncertainty or the "chilling effect caused by the statute's unclear phrasing and structure" and held the statute void for vagueness. *Id.* at 1190.

The fact that the sunset provision refers to "sanctions," as does subsection (d), does not make the statute any less vague, nor does it control its interpretation. *Contra* Defs.' Mot. to Dismiss 9-10. Section 353 is a "sanction[] to fight corruption." 22 U.S.C. § 2277a. It captures congressional intent to "impos[e] targeted sanctions." *Id.* at (a). While subsection (b) does not explicitly reference sanctions, it mandates a report identifying foreign persons who under

subsection (c) will have "sanctions described in subsection (d)" imposed on them. *Id.* at (c). Thus, it is not clear whether the word "sanctions" in the sunset provision refers to (i) the entirety of the sanctions regime outlined in Section 353, (ii) the underlying authority outlined in subsection (b), or (iii) the specific visa restrictions imposed by subsection (d).

Ex post facto interpretations by government agencies cannot cure an unconstitutionally vague statute: "courts, not agencies, will decide 'all relevant questions of law' arising on review of agency action . . . even those involving ambiguous laws . . . and set aside any such action inconsistent with the law as they interpret it." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) (quoting 5 U.S.C. § 706). Section 353's delegation of authority to the U.S. State Department to impose the sanctions contained in subsection (d), *see* Defs.' Mot. to Dismiss 11, does not shift this analysis because it does not extend to interpretation of the ambiguous sunset provision. "A statutory ambiguity does not necessarily reflect a congressional intent that an agency, as opposed to a court, resolve the resulting interpretive question." *Loper*, 603 U.S. at 373.

Defendants also point to several extrinsic sources interpreting Section 353 in favor of their chosen interpretation of the statute. *See* Defs.' Mot. to Dismiss 4-5. However, none of these have the force of law. First, an editorial note contained in the United States Code states that the reference to subsection (b) in the sunset provision should "*[p]robably* . . . be subsection (c)." 22 U.S.C. § 2277 n.4 (emphasis added). "Probably" is far from definitive. Moreover, editorial notes are "prepared by the editors of the Code" unlike "statutory note[s], which [are] based on a provision of law."[5] Despite the footnote, Congress took no action to correct the ambiguity. Thus,

---

[5] Off. of the L. Revision Couns., *Frequently Asked Questions and Glossary*, https://uscode.house.gov/faq.xhtml.

the mystery of whether the reference to subsection (c) is intentional, as suggested by the text of the statute, or a "drafting error" as the government contends, remains unsolved.

A statement by the Congressional Research Service ("CRS") as to the scope of Section 353 is equally equivocal and carries minimal weight because "[i]nformation in a CRS Report should not be relied upon for purposes other than public understanding that has been provided by CRS to Members of Congress."[6]  In fact, the CRS report states that "a targeted sanctions *authority* . . . expired along with . . . *visa restrictions*."  *Id.* (emphasis added).

Ultimately, it is not for the judiciary, and certainly not for the executive branch absent a level of delegation that is not present here, to "rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result."  *Lamie v. U.S. Trustee*, 540 U.S. 526, 542 (2004); *see also United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 496 (D.C. Cir. 2004) (noting that courts should not "rescue Congress from its drafting errors" because "a court's attempt to correct a statute can often create new problems" (quoting *Lamie*, 540 U.S. at 542)).

Because Section 353 is subject to two equally plausible interpretations with drastically different consequences, it constitutes a textbook example of unconstitutional vagueness.

**B.    Mr. Amdani Has Standing to Bring a Vagueness Claim.**

Mr. Amdani has standing to bring a vagueness challenge to Section 353, because he has adequately alleged an "injury in fact, causation, and redressability."  *Hecate Energy LLC v. FERC*, 126 F.4th 660, 665 (2025).  Simply put, "[b]ecause his designation and the bribery allegations remain public, with no indication that the visa restrictions have expired, it is highly unlikely that

---

[6] Congr. Res. Serv., *Central America: Policy Options Following Expiration of Targeted Sanctions Authority* (updated Oct. 1, 2024), https://crsreports.congress.gov/product/pdf/IF/IF12486.

Mr. Amdani will ever be issued a visa, and a de facto ban on entering the United States remains in place."  Am. Compl.  ¶ 11.

Defendants do not dispute that Mr. Amdani previously could not travel to the United States as a result of the statute; rather, they argue that voiding Section 353 for vagueness would not redress any continuing harm.  Under Defendants' current reading of the statute's sunset provision, Mr. Amdani's injury is limited to his "reputation[]" and therefore, "an order delisting [Mr. Amdani] due to an issue of mere statutory construction would not remedy that injury."[7] Defs.' Mot. to Dismiss 8.  Defendants' argument rests on the unjustified assumption that the statute's meaning is clear and assumes that Mr. Amdani is not suffering and will not suffer ongoing harm from any part of the United States government interpreting the statute in a different manner from the interpretation currently put forth by Defendants.

Yet *Hecate* makes clear that redressability only requires "a significant increase in the likelihood that the plaintiff w[ill] obtain relief that directly redresses the injury suffered."  126 F.4th at 666.  Mr. Amdani is suffering from a very real threat, not only of ongoing reputational injury, but also of continued sanctions resulting from the vagueness of Section 353.  Thus, Mr. Amdani's case stands in marked contrast to *Rahmani v. Yellen*, where plaintiffs did not allege any ongoing harm from the menace of ongoing travel restrictions.  *See* No. 24-cv-0285 (RC), 2024 WL 1701681, at *13 (D.D.C. Apr. 19, 2024) ("[T]he Rahmanis have not alleged that they (or their immediate family members) have any intention of travelling to the United States, whether concrete plans or even a mere aspirational desire.").

---

[7] "The law is unclear about whether a plaintiff would be entitled to damages in addition to or in lieu of a hearing.  We do note, however, that a name-clearing hearing might be insufficient to cure all the harm caused by stigmatizing government comments.  For instance, injury to a plaintiff's reputation might be irreversible." *Ersek v. Township of Springfield*, 102 F.3d 79, 84 (3d Cir. 1996).

A finding by the Court that Section 353 is void would redress Mr. Amdani's injuries both by removing his name from the Section 353 Report *and* by removing the ongoing specter of his visa ineligibility associated with Section 353's ambiguous sunset provision.

Section 353's vagueness cannot be remedied by a mere promise by the State Department not to enforce its sanctions against Mr. Amdani. As the Supreme Court explained in *Fox*, the fact that an agency now indicates it will "forebear" moving forward from a particular sanction considering the vagueness of a statute's drafting does not operate to render the request that a law be voided for vagueness "moot." 567 U.S. at 255. In the words of the Court, "the due process protection against vague regulations does not leave [regulated parties] . . . at the mercy of *noblesse oblige*." *Id.* (internal quotation marks and citations omitted). As described, *supra*, current statements by Defendants notwithstanding, it is not clear whether Section 353's visa restrictions remain in effect. As long as this is the case, "the Government's assurance it will elect not to [reinstate penalties] is insufficient to remedy the constitutional violation." *Id.*[8]

Accordingly, Mr. Amdani has requested relief in the form of an order "[d]irect[ing] the State Department to issue a public statement rescinding Mr. Amdani's designation." Am. Compl. ¶ 83. Such an order is appropriate given the statute's vagueness and would effectively "expunge" Mr. Amdani's designation under Section 353, thereby addressing his concerns that he may not be eligible to travel to the United States to visit his family. This request for relief rests on solid

---

[8] To be sure, Mr. Amdani could have been denied a visa regardless of any Section 353 sanction. But this Circuit imposes relaxed redressability requirements in cases such as this to ensure that plaintiffs can pursue procedure-based claims against agencies when it may be difficult to prove that an agency would have made a different decision if proper procedures had been followed. *See, e.g., Narragansett Indian Tribal Historic Pres. Off. v. FERC*, 949 F.3d 8, 13 (D.C. Cir. 2020) ("[I]nstead of needing to establish that compelling the agency to follow the correct procedure *would* lead to a substantive result that favors the petitioner's concrete interests, the petitioner need only show that its concrete interests *could* be better protected.").

precedent, as courts have expunged charges pursuant to vague statutes in order to remedy "the lingering effects of having been referred or charged." *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 788 (4th Cir. 2023); *see also Moore v. Philips*, No. 04 Civ. 8908(DLC), 2006 WL 1006538, at *1, 7 (S.D.N.Y. Apr. 18, 2006) (finding that a rule was unconstitutionally vague and therefore ordering the government to expunge the plaintiff's record and restore any benefits).

## II.    Mr. Amdani Has Properly Pled a Violation of Procedural Due Process.

The Fifth Amendment provides that a person shall not "be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Mr. Amdani has properly alleged a violation of this Constitutional right by pleading (1) a cognizable liberty interest in his reputation and revocation of his visa; (2) that Defendants deprived him of that liberty interest; and (3) that the procedures employed by Defendants were constitutionally inadequate.  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).  Defendants do not contest the second element, and their arguments regarding the first and second elements are unavailing.

### A.    Mr. Amdani Is Entitled to Protection Under the Constitution.

As a threshold issue, Mr. Amdani is entitled to constitutional protection of due process even though he is not a citizen or resident of the United States.  Although non-resident aliens are generally not entitled to the protections of the Fifth Amendment, an exception exists where aliens have come within the territory of the United States and established "substantial connections" with this country, *Olenga v. Gacki*, 507 F. Supp. 3d 260, 274 (D.D.C. 2020), or "accepted some societal obligations."  *Jifry v. F.A.A.*, 370 F.3d 1174, 1182-83 (D.C. Cir. 2004).  Mr. Amdani established significant business activity, purchased a home in the United States and continues to pay property taxes on that home.  Am. Compl. ¶¶ 12, 65.  His wife and children reside here, are U.S. citizens, and (before his visa was revoked) Mr. Amdani frequently visited the family—spending up to one third of the year in the United States, in compliance with the terms of his visa.  Am. Compl. at

¶¶ 12, 65.  Indeed, Mr. Amdani at one time held a green card and at the time of his designation, held a valid visa.  Am. Compl. at ¶ 65.

Defendants barely attempt to challenge Mr. Amdani's claim to "substantial connections." In a footnote without any factual or legal support, Defendants offer only a conclusory assertion that they "do not concede that [Mr. Amdani] has established substantial connections." Defs.' Mot. to Dismiss 13 n.6.[9]  Moreover, Mr. Amdani's "substantial connections" are affirmed by precedent. Although there is no clearly articulated test, this Circuit has performed a factual analysis on a case-by-case basis, *Lopez Bello*, 651 F. Supp. 3d at 38, finding that physical presence, when coupled with a small bank account, is sufficient to establish substantial connections warranting due process protection.  *Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, 251 F.3d 192, 201-03 (D.C. Cir. 2001).  Persons with additional connections similar to Mr. Amdani's have an even stronger basis.  *Ranjan v. U.S. Dep't of Homeland Sec.*, No. CV 23-2453 (LLA), 2024 WL 3835355, at *5 (D.D.C. Aug. 15, 2024) (finding that substantial connections were established where plaintiff lived, studied and worked in the United States for more than six years on various visas, where her husband also lived and worked in the United States pursuant to a visa, and where her child was a citizen who lived in the United States); *Lopez Bello*, 651 F. Supp. 3d at 38 (finding that substantial contacts were established where plaintiff held two visas at the time of his designation, maintained a residence and multiple companies in the United States, and where his wife and children also resided in the United States).  Accordingly, Mr. Amdani clearly meets this threshold standard, and Defendants have failed to present any meaningful arguments to the contrary.

---

[9] Given this cursory denial, the Court should deem that this argument has effectively been waived at the motion to dismiss stage.  *See, i.e., Lopez Bello v. Smith*, 651 F. Supp. 3d 20, 38 (D.D.C. 2022) (disregarding that bare contention that connections to the United States were not "substantial"), *aff'd sub nom. Bello v. Gacki*, 94 F.4th 1067 (D.C. Cir. 2024).

**B.      Mr. Amdani Has Sufficiently Pled a Cognizable Liberty Interest.**

The Constitution envisions broad protections under the Fourteenth Amendment's guarantee of liberty[10] which "denote[ ] not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children . . . and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." *The Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972).  Accordingly, "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau,* 400 U.S. 433, 437 (1971).  Reputational harm alone is not sufficient; a "plus" factor must be shown through either the "stigma plus" or "reputation plus" test. *Doe v. U.S. Dep't of Just.*, 753 F.2d 1092, 1106 (D.C. Cir. 1985).

**i.      Mr. Amdani Has Satisfied the "Stigma Plus" Test for Pleading a Liberty Interest Because He Can Show Broad Preclusion from His Profession.**

Under the "stigma plus" standard, a plaintiff has articulated a liberty interest that warrants due process protection by pleading that the government has "seriously affected, if not destroyed, [the plaintiff's] ability to obtain employment in [his] field."[11] *Garcia*, 2020 WL 134865, at *6

---

[10] Courts treat the due process requirements of the Fifth and Fourteenth Amendments as substantially identical for this analysis. *See Paul v. Davis*, 424 U.S. 693, 702 n.3 (1976).

[11] Notably, Mr. Amdani does not need to allege that he has been *entirely* precluded from the profession. The case law indicates that "a broad effect of largely precluding" the plaintiff is sufficient. *Garcia v. Pompeo*, No. 1:18-CV-01822 (APM), 2020 WL 134865, at *6 (D.D.C. Jan. 13, 2020); *see also Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994) (stating that "if State's action does not have this *binding* effect, but nevertheless has the *broad* effect of largely precluding Kartseva from pursuing her chosen career as a Russian translator, that, too, would constitute a 'status change' adequate to implicate a liberty interest") (emphasis in original); *Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir.) (stating that preclusion must be "sufficiently broad"), *opinion amended on reh'g*, 66 F.3d 1226 (D.C. Cir. 1995).  Courts have held that a 75%

(quoting *Greene v. McElroy*, 360 U.S. 474, 492 (1959)); *see also Holman v. Williams*, 436 F. Supp. 2d 68, 80 (D.D.C. 2006) (finding that a plaintiff survives a motion to dismiss by showing that the government "put a significant roadblock in his ability to obtain other employment"). Although the bar for such a showing is high, requiring the plaintiff to show "misconduct [that] substantially reduce[s] the value of his human capital," *Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497, 1507 (D.C. Cir.), Mr. Amdani's pleading meets this burden.

The Section 353 Report alleges that Mr. Amdani "knowingly engaged in actions that undermine democratic processes or institutions, significant corruption, or obstruction of investigations." These very public allegations were clearly designed to disrupt Mr. Amdani's business by putting business partners (whether actual or potential) on notice that they could be at substantial legal risk if they continue to do business with him and by making it impossible for him to attend any meetings in the United States. And in this respect, the sanctions have achieved their purpose.

The Section 353 Report has effectively forced Mr. Amdani out of the United States market. *See* Am. Compl. ¶ 10, 66 (alleging interference with Mr. Amdani's business operations).[12] Prior to the designation, Mr. Amdani had only two business interests in the United States: the McKinney, Texas smart city, which was terminated after the issuance of the report, Am. Compl. ¶¶ 15, 28, and GK Global, a textile manufacturing company, *see* Am. Compl. ¶ 1. Mr. Amdani pled that he is the former Chairman of GK Global. Am. Compl. ¶ 23. He was forced to step down from GK Global as a direct result of his designation. Whereas Mr. Amdani was previously the

---

reduction of revenues and actions that prevent a company from engaging in its core business are sufficiently "broad." *PDK Labs Inc. v. Ashcroft*, 338 F. Supp. 2d 1, 9-10 (D.D.C. 2004).

[12] Mr. Amdani is prepared to submit a signed statement affirming any facts in this paragraph that the Court deems necessary.

head of U.S.-based operations for GK Global,[13] handling meetings and deciding high-level strategy, he has now been excluded from these functions entirely. He has not held a formal role at the company since his designation and no longer has any meaningful involvement in its operations or decisions. Apart from a stipend that is provided by GK Global, Mr. Amdani's only remaining connection to the company is the occasional informal conversation with his brother, Ashraf (also a U.S. citizen), who continues to be involved in the operations.

The D.C. Circuit Court of Appeals' precedent in *Doe* is instructive. 753 F.2d at 1111-12. There, an attorney who was discharged from government employment based on unprofessional conduct and dishonesty claimed that such allegations infringed on her due process rights under the Fifth Amendment. *Id.* at 1095. The defamation in question was not as widespread as the present case, as it was disclosed only to prospective employers rather than to the public at large. *Id.* at 1113. Even so, the *Doe* Court emphasized the inherently damaging nature of allegations that touch on integrity or dishonesty, and the fact that such allegations negatively affect employment prospects. *Id.* at 1111; *see also McGinnis v. District of Columbia*, 65 F. Supp. 3d 203, 208, 215 (D.D.C. 2014) (finding accusations that a plaintiff lied in a job application had "placed a significant roadblock" in his ability to seek new work). Building on this precedent, *O'Donnell v. Barry*, 148 F.3d 1126, 1141 (D.C. Cir. 1998), further reiterated that the nature of the stigma matters, reasoning that a constitutional violation is more likely to make a candidate unemployable where "it is difficult to put a good face" on the characterization. *Id.* (explaining that a denial of a security clearance is obviously derogatory, whereas other reputational harms, such as where a police officer places the

---

[13] GK Global, through its subsidiaries, engages in business activities with U.S. companies. GK Global itself is not domiciled in the United States, nor are any of its subsidiaries.

public interest above bureaucratic pressures, might be ambiguous because certain employers would value that trait).

It is simply impossible to "put a good face" on the sensational allegation that Mr. Amdani bribed judges of the Supreme Court of Honduras (a claim which he denies and that is contradicted by the fact that Mr. Amdani's business lost a judgment of $159 million in the Supreme Court).[14]

ii.    **The Revocation of Mr. Amdani's Visa Is a Denial of a Previously Held Right or Status Under the Law, Which Also Implicates Due Process.**

Mr. Amdani is also entitled to due process under the "reputation-plus" test because a right or status previously afforded to him by the law has been distinctly altered or extinguished by the Section 353 designation. *Paul*, 424 U.S. at 711-12 (stating that the right or status affected may be one afforded under either state or federal law); *Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983) (characterizing the test as a deprivation or severe impairment of a "legal right").[15]  For example, due process is implicated in the denial of licenses issued by the state, such as driver's licenses, *Paul*, 424 U.S. at 711 (citing *Bell v. Burson*, 402 U.S. 535 (1971)), and in high school suspensions where state law entitles anyone under the age of 21 to a public education, *Goss v. Lopez*, 419 U.S. 565 (1975).  Similarly, in *Wisconsin v. Constantineau,* the Supreme Court held

---

[14] On October 24, 2024, the Special Prosecutor's Office obtained a formal indictment against the three magistrate judges who issued the $159 million judgment against Mr. Amdani. Am. Compl. ¶ 44.  This suggests that any bribery was committed by the defendants in that case, rather than by Mr. Amdani, and shows that Mr. Amdani is actually exposing corruption rather than committing it.

[15] There is some ambiguity under the case law whether this analysis is termed the "reputation-plus" test, *see, i.e.*, *Khalid v. Garland,* No. 1:21-cv-02307 (CRC), 2023 WL 2561943, at *4 (D.D.C. Mar. 16, 2023), or part of the "stigma-plus" test, *see i.e.*, *Evans v. Chalmers,* 703 F.3d 636, 655 (4th Cir. 2012).  Because Defendants have characterized this inquiry as part of the "reputation-plus" test, Mr. Amdani will do the same for the sake of simplicity.  To the extent that the Court deems this inquiry as part of the "stigma-plus" test, Mr. Amdani submits that this is a distinction without a difference.  The case law clearly demonstrates that satisfying the requirement that a right or status previously allotted has been altered or extinguished, coupled with a stigma, is sufficient to proceed on a due process claim, regardless of what test it formally falls under.  *See O'Donnell*, 148 F.3d at 1139.

that the plaintiff, who had been prohibited from buying liquor by a publicly posted announcement, had suffered a due process violation because state law recognized the right of the general public to purchase liquor.  400 U.S. at 435-36.

Here, when his visa was revoked, Mr. Amdani suffered a deprivation of a legal status afforded to him by the Immigration and Nationality Act.[16]  As previously described in Section I.A, given Section 353's ambiguity, it is impossible to determine from the statute whether the visa restrictions have expired.  However, even if the restrictions did expire, there can be no question that Mr. Amdani was banned from the country for six days, plus any additional amount of time that it would take to reapply for a visa.  In *Goss*, the Supreme Court held that a ten-day suspension from high school was not *de minimis* and could not be imposed without due process protection in the form of a hearing.  419 U.S. at 570.  Where the charges were based on misconduct, some of which included physical altercations, the Court held that these charges could seriously damage students' standing with their fellow pupils and teachers and interfere with later employment opportunities.  *Id.* at 575.  The Court held that the inquiry should not go to the "weight" but rather to the "nature of the interest at stake" and that the "severity of the deprivation" was decisive.  *Id.* at 575-76.

### C.    Defendants Have Not Provided Any Process, Let Alone Constitutionally Adequate Process.

Mr. Amdani has not been afforded any opportunity to be heard, much less "at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  Defendants did not notify Mr. Amdani prior to issuing the designation, did not acknowledge receipt of his

---

[16] It is important to note that, contrary to Defendants' assertion, this argument is not rooted the right to travel. C*ontra* Defs.' Mot. to Dismiss 17.  Mr. Amdani is not a nonresident alien without any entitlement to enter the country.  Rather, he held a distinct legal status as a visa holder that was revoked without any due process.

petition until the filing of the Motion to Dismiss, and did not inform him that they had reviewed and denied his petition.  Learning for the first time in the Defendants' opposition that his petition was considered and rejected, Mr. Amdani has no idea who reviewed the application, when they reviewed the application, what criteria they applied, what process they used, or why they denied it.  While Defendants allege that Mr. Amdani "has availed himself of the opportunity to provide information to the State Department, including 'the submission of a detailed petition,'" Defs.' Mot. to Dismiss 18, that opportunity is meaningless without more information about the process used to consider the petition.

A formal balancing analysis (as required by *Mathews*) of whether the administrative procedures surrounding Section 353 are constitutionally adequate leads to the same conclusion. The *Mathews* factors are: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of rights through the procedures used and the probative value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail.  424 US at 335.  The first two factors weigh heavily in favor of Mr. Amdani.  With respect to the first factor, the private interest affected, Mr. Amdani is prevented from visiting his wife and children and cannot engage in business and business development in the United States, including on behalf of a company that he spent decades building.  Am Compl. ¶¶ 11, 66.  With respect to the second factor, the risk of erroneous deprivation of rights, the accusations run counter to the evidence because Mr. Amdani's business venture lost the lawsuit for which he allegedly paid a bribe and the judges who returned the decision against him have been criminally indicted in Honduras as a result of that decision.  Am. Compl. ¶¶ 45-46.

The third factor, the government interest, also weighs in favor of Mr. Amdani.  The government will suffer little, if any, harm if persons such as Mr. Amdani, who are sanctioned pursuant to Section 353, are permitted to meaningfully challenge their designations in an established process.  Defendants' argument that their minimal procedures are rooted in foreign policy and national security concerns is unavailing.  Defs.' Mot. to Dismiss 18.  Indeed, the Office of Foreign Assets Control ("OFAC") regularly provides similar reviews without compromising those interests.  Recognizing the damage that a public designation has on an individual, OFAC provides an email submission process whereby persons who have been sanctioned can submit a petition for reconsideration to a dedicated email address, may request a meeting, and are entitled to review of that application, followed by a written decision.  31 CFR § 501.807.  OFAC also provides sanctioned persons with a courtesy document that identifies unclassified information underlying their designation.[17]  Defendants, whose actions impose worse reputational harms than many of OFAC's designations, have not articulated any processes whatsoever and have failed to explain why they cannot provide even the minimum protections provided by OFAC.  While the legal scheme governing Section 353 may not currently require such a process, including the request that Defendants "issue a written, reasoned decision on Plaintiff's pending delisting petition," Am. Compl. ¶ 81, it has long been recognized that due process may require written decisions in situations such as these, where a written reason would "contribute significantly to the 'fairness and reliability' of the process by which an individual is deprived of liberty or property" and the burden on the government would be minimal.  *Black v. Romano*, 471 U.S. 606, 617-19 (1985) (Marshall, J., concurring) (quoting *Mathews*, 424 U.S. at 343) (collecting cases).

---

[17] Off. of Foreign Asset Control, *Filing a Petition for Removal from an OFAC List*, https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list.

### III.    Mr. Amdani's Requested Forms of Relief Are Proper.

Defendants do not challenge Mr. Amdani's claims under the APA, but challenge two of his requested forms of relief on the basis that they fall outside the APA's scope.  *See* Defs.' Mot. to Dismiss 6-8.  For the reasons discussed, *supra* at Section II, Mr. Amdani's claims for relief are entirely proper in the context of constitutional claims under the Due Process Clause and should, like the underlying claims on which they are based, survive Defendants' Motion to Dismiss. *Compare* Am. Compl. ¶ 83 (requesting an order "[d]irect[ing] the State Department to issue a public order rescinding Mr. Amdani's designation" and "issue a written, reasoned, decision on [Mr. Amdani's] pending delisting petition") *with Lopez v. Williams*, 372 F. Supp. 1279, 1296 (S.D. Ohio 1973) ("If [the plaintiffs'] suspensions were imposed without due process of law, they have a right to a declaration that the suspension procedure was unconstitutional and to the expunction of any reference to the suspension from all records."), *aff'd*, 419 U.S. 565 (1975), *and Morrissey v. Brewer*, 408 U.S. 471, 487 (1972) (requiring written notice and summary of decision, including underlying evidence, to revoke parole).

### IV.    Defendants Concede They Engaged in Decision-making After Mr. Amdani's Submissions to the State Department.

After ignoring Mr. Amdani's repeated attempts to engage with the State Department, Defendants now concede that "the State Department has" in fact "considered the information provided" in Mr. Amdani's application but nonetheless claim that they have no obligation to provide additional reasoning for his designation.  Defs.' Mot. to Dismiss 18.  While this concession may effectively moot Mr. Amdani's claim under 5 U.S.C. § 555, it raises the question of whether the State Department acted arbitrarily and capriciously in violation of the APA when it decided to prolong the sanction against Mr. Amdani despite evidence to the contrary including the fact that Mr. Amdani's business lost a $159 million judgement in the Honduran Supreme Court and the fact

that the judges who returned the decision have been criminally charged.[18]  *See Motor Vehicles Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co*., 463 U.S. 29, 43 (1983) (holding an agency decision will be considered arbitrary and capricious "if the agency has . . . entirely failed to consider an important aspect of the problem").

## CONCLUSION

For the aforementioned reasons, the Court should deny the Motion to Dismiss.

Dated: February 28, 2025                    Respectfully Submitted,

*/s/ Thomas A. Firestone*
Thomas A. Firestone (1500468)
Morgan A. Miller (1047207)
Mary E. Maloney (90018623)

SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
thomas.firestone@squirepb.com
morgan.miller@squirepb.com
mary.maloney@squirepb.com

Tamara Rozina *(admitted pro hac vice)*

SQUIRE PATTON BOGGS (US) LLP
1120 Avenue of the Americas, 13th Floor
New York, NY 10036
Telephone: (212) 872-9800
tamara.rozina@squirepb.com

*Counsel for Plaintiff*

---

[18] Mr. Amdani is still evaluating this development and reserves the right to bring a separate challenge to this decision.

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2025, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/Doc. system, which will notify all counsel of record of such filing.

*/s/ Thomas A. Firestone*
Thomas A. Firestone