**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MOHAMMAD YUSUF AMDANI BAI,

      *Plaintiff*,

v.

MARCO RUBIO, in his official capacity as
Secretary of the United States Department of
State, *et al.*,

      *Defendants*.

No. 1:24-cv-03138-JMC

<u>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.    Plaintiff seeks relief that is unavailable under the APA. ........................................ 2

II.    Plaintiff lacks standing to bring a vagueness challenge................................... 4

III.    Plaintiff has failed to state a vagueness challenge. ....................................... 7

IV.    Plaintiff has failed to state a claim pursuant to 5 U.S.C. § 555(b)............................. 10

V.    Plaintiff has failed to state a procedural due process claim based on a deprivation of any protected interest in his reputation. .......................................................... 11

    A.    Plaintiff has not alleged a "plus" factor related to alleged deprivation to conduct business................................................................................................. 11

    B.    Plaintiff has not alleged a "plus" factor related to revocation of his visa.................... 15

    C.    Plaintiff has been afforded sufficient process. ............................................. 16

CONCLUSION.................................................................................................................. 17

**INTRODUCTION**

Plaintiff's opposition concedes that his 5 U.S.C. § 555 claim fails, confirms that his vagueness and procedural due process claims fail, and acknowledges that some of his requested relief is improper.

First, Plaintiff lacks standing to raise his vagueness challenge. Plaintiff does not meaningfully contest that his alleged reputational injury does not establish redressability, and Plaintiff cannot rely on his now-expired visa and admissibility restrictions to establish redressability. In any event, Plaintiff's vagueness challenge fails on the merits. Plaintiff argues that it is not clear whether the word "sanctions" in Section 353, 22 U.S.C. § 2277a, refers to visa and admissibility restrictions. But Section 353 explicitly defines "sanctions" as visa and admissibility restrictions.

Plaintiff's procedural due process claim based on reputational deprivation also fails. In particular, Plaintiff fails to allege a "plus" factor—*i.e.*, that his inclusion on the December 2023 Supplemental Report has altered or extinguished an existing right. Plaintiff's allegations related to business harm do not establish alteration or extinguishment of a right, as he fails to meet the high bar for establishing broad preclusion of his business interests. Nor can Plaintiff rely on the revocation of his visa, as there is no property interest in visas.

Plaintiff concedes that he has failed to state a claim pursuant to 5 U.S.C. § 555, albeit for the wrong reason. Plaintiff also unintentionally concedes that two of his requested forms of relief are improper. In particular, Plaintiff concedes that two of his requested forms of relief are not available under the Administrative Procedure Act ("APA"), but argues that they are available pursuant to his constitutional claims. But Plaintiff's constitutional claims are necessarily brought pursuant to the APA. Plaintiff's constitutional claims are thus subject to the APA's procedural

limitations on available relief—which, as Plaintiff concedes, preclude two of his requested forms of relief here.

Accordingly, this Court should dismiss Plaintiff's claims under the Due Process Clause, the vagueness doctrine, and 5 U.S.C. § 555(b); as well as Plaintiff's requests for injunctive relief ordering Defendants to take affirmative action untethered to any legal obligation.

## ARGUMENT

### I.    Plaintiff seeks relief that is unavailable under the APA.

Plaintiff cannot redeem his improper requested relief by arguing that such relief arises under the Constitution.  As Defendants explained, the APA precludes Plaintiff from obtaining two of his requested forms of relief: an order from this Court compelling the State Department to issue a public statement "rescinding [Plaintiff's] designation," and an order compelling the State Department to issue a written response to Plaintiff's "delisting petition."  *See* Defs.' Mot. to Dismiss at 6–7 ("Mot.") (quoting Am. Comp. ¶¶ 81, 83).  Plaintiff does not contest that this requested relief is improper under the APA.  *See generally* Pl.'s Opp. to Defs.' Mot. to Dismiss at 20 ("Opp.").  Instead, Plaintiff argues that this requested relief is proper because he brings claims under the Fifth Amendment's Due Process Clause.  *See id.*; *see also* Compl. ¶¶ 62–70, 71–75 (bringing procedural due process and vagueness challenges).  Preliminarily, Plaintiff's constitutional challenges fail, and so those claims cannot support his improper requested relief. *See* Mot. 8–19 (explaining that Plaintiff lacks standing to bring a vagueness challenge, fails to state a vagueness challenge, and fails to state a procedural due process challenge); *infra* pp. 4–17 (same). Regardless, Plaintiff's constitutional claims are still subject to the APA's procedural limitations because the APA is the only vehicle available to Plaintiff to challenge agency action.

The Constitution does not contain an implied right of action.  *See Armstrong v. Exceptional Child Ctr. Inc.*, 575 U.S. 320, 324–27 (2015).  Rather, a court's power to enforce the Constitution

in the absence of a statutory cause of action (such as 42 U.S.C. § 1983) arises in equity.  *See id.* at 327 ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity . . . .").  The "basic premise" of such equitable power "is that, even after the passage of the APA, some residuum of power remains with the district court to review agency action that is *ultra vires*."  *Rhode Island Dep't of Env't Mgmt. v. United States*, 304 F.3d 31, 42 (1st Cir. 2002) (quoting *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988)).

Plaintiff, however, cannot bring his constitutional claims in equity.  For non-statutory, equitable causes of action, a plaintiff must satisfy "the traditional requirement for equitable relief that a plaintiff lack an adequate remedy at law."  33 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Judicial Review § 8307 (2d ed. 2024 update) ("33 Fed. Prac. & Proc. Judicial Review"); *see also, e.g.*, *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 59 (1st Cir. 2007) ("[S]uch review [of non-statutory causes of action alleging constitutional violations] may occur only if its absence would 'wholly deprive the party of a meaningful and adequate means of vindicating its . . . rights.'") (quoting *Bd. of Governors of Fed. Reserv. Sys. v. MCorp. Fin., Inc.*, 502 U.S. 32, 43 (1991)); *Federal Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 763 (D.C. Cir. 2022) (explaining that there must be "no alternative procedure for review" for "a suit in equity seeking injunctive relief" (quoting *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009))).  "Thus, if the APA . . . can provide adequate relief, an equitable remedy via nonstatutory review ought not be available."  33 Fed. Prac. & Proc. Judicial Review § 8307.  In this way, "[t]he power of federal courts of equity to enjoin unlawful executive action is subject to . . . implied statutory limitations," such as the APA's limitations.  *Armstrong*, 575 U.S. at 327.

Here, Plaintiff indeed has "a means of vindicating [his] rights without nonstatutory review:

3

the APA." *Puerto Rico*, 490 F.3d at 59–60.  Plaintiff may assert his procedural due process and vagueness claims as part of this Court's review of a discrete, final agency action.  Indeed, the APA explicitly provides for judicial review of final agency action that is contrary to constitutional power.  *See* 5 U.S.C. § 706(2)(B).  Plaintiff therefore cannot bring his constitutional claims as equitable, non-statutory causes of action.  Rather, to the extent he brings such constitutional claims, he must do so pursuant to the APA.  Plaintiff's constitutional claims are thus necessarily subject to the procedural limitations of the APA—including the APA's restrictions on available relief.  *See* Mot. 6 ("[T]he only agency action that can be compelled under the APA is action legally *required*." (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004)).

As noted, Plaintiff does not dispute that two of his requested forms relief—orders from this Court compelling the State Department to issue a public statement "rescinding [Plaintiff's] designation," and to issue a written response to his "delisting petition," Am. Comp. ¶¶ 81, 83— are improper under the APA.  *See generally* Opp. 20.  Accordingly, the Court should dismiss Plaintiff's request for orders from this Court compelling the State Department to issue a public statement "rescinding [Plaintiff's] designation," or to issue a written response to his "delisting petition."  Comp. ¶¶ 81, 83.  Alternatively, should the Court dismiss Plaintiff's constitutional claims for the reasons explained herein, the Court should dismiss Plaintiff's improper requests for relief alongside such dismissals.

## II.    Plaintiff lacks standing to bring a vagueness challenge.

Plaintiff summarily alleges that he suffers "reputational injury" from his inclusion on the December 2023 Supplemental Report, and that voiding Section 353 would redress those reputational injuries "by removing his name from" that report.  *See, e.g.*, Opp. 9.  But Plaintiff does not engage with Defendants' explanation—nor with any of Defendants' supporting case

law—that the remedy Plaintiff seeks would not redress his alleged reputational injury.  *See* Mot. 8 (collecting cases).

Just like the plaintiffs in *Rahmani v. Yellen*, Plaintiff alleges that he has "suffered a reputational injury stemming from the stigma of State's [Section 353] designation and the corresponding announcement" indicating that he was included in the December 2023 Supplemental Report for engaging in "significant corruption."  *Rahmani v. Yellen*, No. 24-cv-0285-RC, 2024 WL 1701681, at *13 (D.D.C. Apr. 19, 2024) (considering challenge to plaintiffs' designations under Section 7031(c), a statute imposing visa restrictions for significant corruption). Indeed, Plaintiff's alleged reputational injury stems from "[t]he public accusation" that Plaintiff engaged in significant corruption.  Am. Compl. ¶ 11.  Plaintiff alleges that this reputational injury persists so long as his "designation and the bribery allegations remain public."  *Id*.  But just like the statutory-authority claim in *Rahmani*, the Court's endorsement of Plaintiff's claim that Section 353 is ambiguous as to when the Section 353 sanctions expire "would do nothing to contradict the factual basis of State's public assessment that [Plaintiff has] been involved with significant corruption," "[n]or would it redress any of the corresponding injuries to [Plaintiff's] image."  *Id*. Even if Plaintiff were correct that an order voiding Section 353 for vagueness would automatically "remov[e] [Plaintiff's] name from the" December 2023 Supplemental Report published online and in the Federal Register, Opp. 9, that would have no effect on the historical fact that the State Department believed he engaged in significant corruption.  Thus, even were Plaintiff to prevail on his vagueness challenge, it would not redress his alleged injury from "[t]he public accusation" that Plaintiff engaged in significant corruption.  Am. ¶ 11.

Plaintiff cannot save his claim with reference to Section 353's now-expired visa and admissibility restrictions.  Plaintiff's attempt to distinguish *Rahmani* on the basis of his alleged

"ongoing travel restrictions" fails given that Plaintiff is not, as a matter of law, subject to any visa or admissibility restrictions pursuant to Section 353. *See* 22 U.S.C. § 2277a(f); *see also, e.g.*, Mot. 9–11 (explaining that Section 353 is clear and unambiguous); *infra* pp. 7–9 (same). Accordingly, no order from this Court could redress any alleged harm based on the visa and admissibility restrictions.

Plaintiff's attempt to hide behind allegedly "relaxed" redressability requirements is misplaced. *See* Opp. 10 n.8. In *Hecate Energy LLC v. FERC*, the D.C. Circuit simply confirmed that redressability requires more than mere "'plausib[ility]' that the court's action will [] redress the plaintiff's injury," 126 F.4th 660, 666 (D.C. Cir. 2025) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43–46 (1976)), and instead requires "a significant increase in the likelihood that the plaintiff will obtain relief that directly redresses the injury suffered," *id.* (quoting *Utah v. Evans*, 536 U.S. 452, 4643 (2002)). Here, Plaintiff cannot show *any* likelihood of redressability. As explained above, an order voiding Section 353 for vagueness related to the expiration date of Section 353's sanctions "would do nothing to contradict the factual basis of State's public assessment that [Plaintiff has] been involved with significant corruption." *Rahmani*, 2024 WL 1701681, at *13.

Nor does *Narragansett Indian Tribal Historic Preservation Office v. FERC*, 949 F.3d 8, 13 (D.C. Cir. 2020), save Plaintiff's vagueness challenge, *see* Opp. 10 n.8. That case acknowledged that "procedural rights claims are subject to a less demanding redressability requirement," such that a plaintiff need only show "that compelling the agency to follow the correct procedure . . . *could* . . . better protect[]" the plaintiff's interests. *Narragansett Indian Tribal Historic Pres. Off.*, 949 F.3d at 13. But the D.C. Circuit in that case also explicitly recognized that "a wholly speculative prospect of redress still does not pass muster." *Id.* Here, Plaintiff cannot

show even mere speculation that an order voiding Section 353 for vagueness would redress his alleged reputational injury stemming from his inclusion on the public December 2023 Supplemental Report. Accordingly, this Court should dismiss Plaintiff's vagueness challenge for lack of standing.

**III.    Plaintiff has failed to state a vagueness challenge.**

Plaintiff's alleged vagueness is belied by the explicit language of Section 353. The premise of Plaintiff's argument is that subsection (f) of Section 353 is ambiguous to as whether or not all pre-existing visa and admissibility restrictions imposed pursuant to Section 353 expired on December 27, 2023. *See* 22 U.S.C. § 2277a(f). But as Defendants have explained, Section 353 explicitly confirms that all pre-existing visa and admissibility restrictions imposed pursuant to Section 353 did indeed expire on December 27, 2023. *See id.* ("The authority to impose sanctions under subsection (b), and any sanctions imposed pursuant to such authority, shall expire on the date that is 3 years after December 27, 2020."); Mot. 9–10. Plaintiff's alternative interpretation of Section 353—under which pre-existing visa and admissibility restrictions imposed pursuant to Section 353 did *not* expire—is inconsistent with a plain reading of the statute.

Under Plaintiff's alternative interpretation, the use of the word "sanctions" in subsection (f) could refer to inclusion on a Section 353 report, rather than to visa and admissibility restrictions. *See* Opp. 6 (referring to inclusion on a Section 353 report as "'name and shame' sanctions"). Thus, argues Plaintiff, Section 353 could be read to "sunset" only the President's obligation to submit reports to Congress, rather than any pre-existing visa and admissibility restrictions imposed pursuant to Section 353. *See id.*; *see also* Compl. ¶¶ 73–74. But this interpretation would be contrary to the plain language of the statute for at least two reasons.

First, Section 353 explicitly defines "sanctions" as visa and admissibility restrictions. *See*

22 U.S.C. § 2277a(d)(1). Plaintiff fails to explain how subsection (f)'s reference to "sanctions" could refer to anything other than visa and admissibility restrictions. *See Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (noting the "normal rule of statutory construction that 'identical words used in different parts of the same act are intended to have the same meaning'" (citation omitted)).

Second, Plaintiff's alternative interpretation is nonsensical. Subsection (f) provides that *both* "[t]he authority to impose sanctions under subsection (b) *and* any sanctions imposed pursuant to such authority[] shall expire on" December 27, 2023. 22 U.S.C. § 2277a(f) (emphasis added). In other words, both (1) the authority to impose future "sanctions" and (2) any prior "sanctions" "shall expire." *Id*. If Plaintiff were correct that "sanctions" meant mere inclusion on a Section 353 report—as opposed to visa and admissibility restrictions—then subsection (f) would necessarily mean that (1) the authority to issue Section 353 reports expired, and (2) all prior Section 353 reports expired. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'").

The problem with that interpretation is that the mere existence of a Section 353 report cannot "expire." *Id*. Certainly, the *consequences* of inclusion on a Section 353 report—*i.e.*, the visa and admissibility restrictions—may expire. But the existence of a published Federal Register notice itself simply cannot "expire." And if Congress had intended that the State Department must affirmatively *vacate* all previously published Section 353 reports on December 27, 2023, Congress easily could have said so. *See, e.g.*, *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 826 (2018) ("Had Congress likewise intended § 1610(g) to have such an effect, it knew how to say so."); *Biden v. Texas*, 142 S. Ct. 2528, 2539 (2022) ("If Congress had wanted the provision to have that

effect, it could have said so in words far simpler than those that it wrote."). Accordingly, the only logical definition of "sanctions" in subsection (f) is visa and admissibility restrictions. Under that definition, Plaintiff's visa and admissibility restrictions imposed pursuant to Section 353 expired on December 27, 2023.

In any event, Plaintiff neglects to explain how his challenge comports with the vagueness doctrine's "twin concerns" of "providing notice and preventing arbitrary enforcement." Mot. 10 (quoting *Beckles v. United States*, 580 U.S. 256, 265 (2017)). Plaintiff provides only bare assertions that he "did not have 'fair notice of what is prohibited,'" Opp. 5, and that Section 353 "fails to provide '[e]xplicit guidelines" for enforcement. Yet, as Defendants explained, *see* Mot. 10–11, Section 353 is clear about the nature of the corruption it targets, 22 U.S.C. § 2277a(b), and does not leave the State Department with any discretion in impose sanctions, *see id.* § 2277a(c) ("The President *shall impose* the sanctions described in subsection (d) with respect to each foreign person identified in the report required under subsection (b)."). Plaintiff's "bare, conclusory assertions" carry no weight. *See, e.g.*, *Stevens v. Sodexo, Inc.*, 846 F. Supp. 2d 119, 128 (D.D.C. 2012).

Plaintiff's remaining arguments are unpersuasive. Defendants have not sought to "remed[y]" any alleged vagueness with a promise of nonenforcement. *See* Opp. 10 (discussing this argument in the context of redressability). Defendants have not and do not offer any promise of nonenforcement of Section 353. Rather, *Congress* provided that the visa and admissibility restrictions issued pursuant to Section 353 expired on December 27, 2023. *See* 22 U.S.C. § 2277a(f).

Plaintiff's allegation that he was notified of his Section 353 visa and admissibility restrictions *after* they expired on December 27, 2023, is of no relevance to the vagueness inquiry.

*See* Opp. 5.  Plaintiff protests that the State Department sent him email notification of his visa and admissibility restrictions imposed pursuant to Section 353 on January 5, 2024; and that the relevant Federal Register notice was published on January 9, 2024.  *See id.*  But as Plaintiff himself concedes, the State Department issued the December 2023 Supplemental Report on December 21, 2023—before the expiration date.  *See* Mot. 4; Am. Compl. ¶ 5.[1]  That various forms of notice were subsequently issued a few days later is irrelevant.  Indeed, the Federal Register Act itself "repeatedly" recognizes the difference "between the publication of a document" and the "issuance, prescription, or promulgation" of a document.  *Humane Soc'y of the U.S. v. U.S. Dep't of Agric.*, 41 F.4th 564, 569 (D.C. Cir. 2022).  The Act thus "contemplates that a rule may be prescribed *before* publication in the Federal Register."  *Id.*  Accordingly, the Court should dismiss Plaintiff's vagueness challenge for failure to state a claim.

**IV.  Plaintiff has failed to state a claim pursuant to 5 U.S.C. § 555(b).**

Plaintiff concedes that his claim pursuant to 5 U.S.C. § 555(b) fails.  *See* Opp. 20–21.  Notably, however, the logic behind Plaintiff's concession is inaccurate.  Plaintiff concedes his § 555(b) claim because it has allegedly been "moot[ed]" by Defendants' "concession" that the State Department "'considered the information provided' in" Plaintiff's written submission.  Opp. 20.  But Plaintiff's § 555(b) claim cannot be moot because Plaintiff's § 555(b) claim failed to begin with.  As Defendants explained, § 555(b) merely provides interested third parties with a limited right of intervention with respect to ongoing agency proceedings, *see* Mot. 11–12, which Plaintiff does not contest, *see generally* Opp. 20–21.  Section 555(b) therefore does not require the State

---

[1]    Plaintiff alleges that the December 2023 Supplemental Notice was published on December 20, 2023.  *See* Am. Compl. ¶ 5.  The initial online press statement, however, is dated December 21, 2023.  *See* U.S. Dep't of State, *New Listings Under the Section 353 Corrupt and Undemocratic Actors Report* (Dec. 21, 2023), https://2021-2025.state.gov/new-listings-under-the-section-353-corrupt-and-undemocratic-actors-report.

Department to provide Plaintiff with an "appearance" to "review and consider [his] evidence," Compl. ¶ 79, nor otherwise require the State Department to "'consider[] the information provided' in" Plaintiff's written submission, Opp. 20.

Plaintiff is broadly correct, however, to concede his misplaced § 555(b) claim. Accordingly, the Court should dismiss Plaintiff's § 555(b) claim for failure to state a claim.

## V.    Plaintiff has failed to state a procedural due process claim based on a deprivation of any protected interest in his reputation.

Even assuming Plaintiff has alleged some reputational harm from his inclusion on the December 2023 Supplemental Report, Plaintiff has failed to allege a cognizable due process claim based on such harm because he cannot show that such inclusion "alter[ed] or extinguishe[d] 'a right or status previously recognized by state law.'" *Khalid v. Garland*, No. 1:21-cv-02307-CRC, 2023 WL 2561943, at *4 (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)); *see also* Mot. 15–16. Plaintiff posits two different rights that he alleges were "alter[ed] or extinguishe[d]" by his inclusion on the December 2023 Supplemental Report.  Neither are sufficient to state a procedural due process claim.[2]

### A.    Plaintiff has not alleged a "plus" factor related to alleged deprivation to conduct business.

First, Plaintiff argues that the government has deprived him of his ability to conduct

---

[2]    Plaintiff appears to allege only a single procedural due process claim, which claim is premised on alleged deprivation to his reputation.  Plaintiff concedes that he does not bring a procedural due process claim premised on alleged deprivation of his right to travel.  *See* Opp. 17 n.16; *see also* Mot. 17 (explaining why such a claim would fail).  Plaintiff also fails to present argument on a procedural due process claim independently premised on a deprivation of his right to conduct business (*i.e.*, separate from his procedural due process claim alleging a reputational deprivation, in which he argues that his business harm is a "plus" factor).  *See generally* Opp. 13–17.  To the extent Plaintiff does seek to bring an independent procedural due process claim premised on a deprivation of his right to conduct business, it would fail for all the same reasons that Plaintiff's alleged business harm does not establish the requisite "plus" factor for a reputational deprivation.  *See infra* pp. 11–15.

business in the United States. But Plaintiff's argument is based on improper new allegations raised for the first time in his briefing. And regardless, even Plaintiff's improper new allegations do not rise to the high level of a constitutional violation.

Plaintiff lists a bevy of new allegations in his brief that are not included in his complaint, including that "[t]he Section 353 Report has effectively forced [Plaintiff] out of the United States market," and that he "was forced to step down from GK Global as a direct result of his designation." Opp. 14. But in the complaint itself, Plaintiff fails to allege that his inclusion on the December 2023 Supplemental Report was even related to his split from GK Global, much less that it was the cause of such split. *See generally* Am. Compl. Indeed, in contrast to Plaintiff's newfound allegations of total "exclu[sion]" from GK Global following the December 2023 Supplemental Report, Opp. 15, the complaint includes lengthy descriptions of GK Global's operations, Plaintiff's role in such operations, and Plaintiff's "longstanding professional ties to the U.S. through GK Global[]." Am. Compl. ¶¶ 1–2, 14, 27–30, 32; *see also id.* ¶¶ 1, 3, 29–30, 32 (noting Plaintiff's founding and operation of GK Foundation, whose activities are allegedly funded by GK Global, and describing its activities). The complaint's description of Plaintiff as "the *former* Chairman" of GK Global, *id.* ¶ 23 (emphasis added), is the closest the complaint gets to even suggesting that Plaintiff is no longer actively involved with GK Global. Moreover, contrary to Plaintiff's assertions of total alienation from GK Global, Plaintiff notes that he still receives "a stipend" from GK Global. Opp. 15.

Regardless of the inconsistency between the complaint and Plaintiff's opposition brief, "[i]t is well settled law that a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss." *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014) (collecting cases). For all the reasons Defendants have already explained, Plaintiff's

complaint cannot survive a motion to dismiss. *See* Mot. 13–15. The complaint alleges the suspension of only a single project—the McKinney, Texas project—and otherwise includes only bare, conclusory allegations. *See id.*

In any event, even Plaintiff's newfound allegations still do not come close to meeting the "stringent standard" for establishing a constitutional violation on the basis of lost business opportunities. *Garcia v. Pompeo*, No. 1:18-cv-01822-APM, 2020 WL 134865, at *6 (D.D.C. Jan. 13, 2020); *see also Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir.), *opinion amended on reh'g*, 66 F.3d 1226 (D.C. Cir. 1995) (noting that this standard presents a "high" bar). Plaintiff meets this high standard only if "[government] action precludes [him] from pursuing [his] profession," a standard that is not met if he "has merely lost one position in [his] profession but is not foreclosed from reentering the field." *Kartseva v. Dep't of State*, 37 F.3d 1524, 1529 (D.C. Cir. 1994). Plaintiff has not met this standard.

Plaintiff is a non-United States citizen residing in Honduras who describes his profession as "a businessman and philanthropist." Am. Compl. ¶¶ 1, 23. Even taking into account Plaintiff's improper new allegations, Plaintiff alleges only two instances of business harm. First, he allegedly "was forced to step down from GK Global," Opp. 14; and second, the McKinney, Texas project was supposedly "terminated after issuance of the report," *id.*; *see also* Am. Compl. ¶ 15. Contrary to Plaintiff's baseless assertion that he has "effectively [been] forced . . . out of the United States market," *id.*, Plaintiff "offers no evidence of broad preclusion of employment" as a businessman beyond these two discrete examples. *Garcia*, 2020 WL 134865, at *7. As the D.C. Circuit has repeatedly confirmed, "[d]ischarge from a particular job is not the same as exclusion from one's chosen profession." *Crooks v. Mabus*, 845 F.3d 412, 421 (D.C. Cir. 2016) (noting that appellant, "while unable to continue in his role as a [Navy Junior ROTC] instructor, was able to find

employment as a teacher at a new institution"); *see also Kartseva*, 37 F.3d at 1529 ("[I]f [the plaintiff] has merely lost one position in her profession but is not foreclosed from reentering the field, she has not carried her burden . . . ."); *Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983) ("Financial loss and loss of some employment opportunities do not . . . amount to an alteration of a legal right."); *Trifax Corp. v. Dist of Columbia*, 314 F.3d 641, 644–65 (D.C. Cir. 2003) (plaintiff did not show "anything remotely close to 'broad preclusion'" where city "declined to renew at least two contracts with" plaintiff, but plaintiff obtained other contracts).

In resisting this high standard, Plaintiff confuses the standard applicable to government employment and non-government employment.  For example, contrary to Plaintiff's attempted comparison to *Doe v. U.S. Department of Justice*, that case turned on the governmental nature of the plaintiff's former employment.  753 F.2d 1092, 1107 (D.C. Cir. 1985) ("[I]t is the individual's status as a government employee and not his property interest in continued employment which furnishes the 'plus' that raises reputation to the level of a constitutionally protected liberty interest." (quoting *Dennis v. S. & S. Consolidated Rural High School Dist.*, 577 F.2d 338, 343 (5th Cir. 1978)); *see also, e.g.*, *Dennis*, 577 F.2d at 343 ("*Paul* [*v. Davis*] expressly rejected the theory that every defamation of a private citizen by the government violates a liberty interest . . . .  Rather, the Court indicated that the existence of a liberty interest depended upon the presence of a special relationship between the government and the individual in specific contexts.").  Plaintiff cannot compare his situation, which involves no government employment, to the plaintiff in *Doe*.

Plaintiff's own cited cases confirm that Plaintiff has not met his high burden here.  Those cases establish that conclusory allegations or mere "set . . . back[s]" in one's chosen career are insufficient to establish a constitutional violation.  *See O'Donnell v. Barry*, 148 F.3d 1126, 1141–42 (D.C. Cir. 1998) (affirming dismissal of stigma-plus claim where plaintiff found alternative

14

employment, even if he was "demot[ed]" and "set . . . back a step on his career path"); *Taylor*, 56 F.3d at 1507 (affirming denial of preliminary injunction where "all [plaintiff] proffered . . . was a simple assertion that he has been unable to find employment in his chosen field, a difficulty that if true might easily be explained in other ways").  Rather, a plaintiff must establish that government action "denigrated the plaintiff's professional competence and impugned his personal reputation in such a fashion as to effectively put a significant roadblock in his ability to obtain other employment."  *Holman v. Williams,* 436 F.Supp.2d 68, 80 (D.D.C. 2006) (denying motion to dismiss where plaintiff-attorney alleged that "he has been unable to secure other employment"); *see also PDK Labs Inc. v. Ashcroft*, 338 F. Supp. 2d 1, 10 (D.D.C. 2004) (granting summary judgment to plaintiff where government action had "the direct effect of preventing [plaintiff-company] from engaging in its core business"); *McGinnis v. District of Columbia*, 65 F. Supp. 3d 203, 215 (D.D.C. 2014) (denying motion to dismiss where plaintiff alleged that "she has 'applied for numerous positions in law enforcement, but has not been hired by any law enforcement agency'" (citations omitted)).

Thus, even considering Plaintiff's improper new allegations related to his former position at GK Global, included for the first time in his briefing, Plaintiff fails to allege that he has been broadly precluded from pursuing his chosen profession in business.

### B.  Plaintiff has not alleged a "plus" factor related to revocation of his visa.

Plaintiff next argues that the revocation of his visa—following his inclusion on the December 2023 Supplemental Report on December 21, 2023—constitutes a revocation of an existing right or status.  *See* Opp. 16–17.  Preliminarily, Plaintiff's complaint does not plead any such visa revocation.  *See generally* Am. Compl.  Indeed, the complaint even explicitly notes that Plaintiff "is not challenging the denial of a visa application."  Am. Compl. ¶ 50.  As explained,

Plaintiff cannot amend his complaint through his opposition to a motion to dismiss. *See Kingman Park Civic Ass'n*, 27 F. Supp. 3d at 160 n.7.

In any event, amendment would be futile because Plaintiff had no property interest in his visa. *See, e.g.*, *Kleindienst v. Mandel,* 408 U.S. 753, 762 (1972) (noting that an unadmitted and nonresident alien has "no constitutional right of entry to this country as a nonimmigrant or otherwise"); *cf. Mahmood v. DHS*, No. 21-cv-1262 (RC), 2021 WL 5998385, at *9 (D.D.C. Dec. 20, 2021) (rejecting procedural due process claim based on denial of immigrant visa because "there is no property right in an immigrant visa"); *Lleshi v. Kerry*, 127 F. Supp. 3d 196, 201 (S.D.N.Y. 2015) ("[B]ecause visas do not constitute a life, liberty, or property interest sufficient to invoke the protections of due process, Plaintiffs have failed to identify a valid constitutional claim . . . ."). Rather, "[c]onsular officers have complete discretion over issuance and revocation of visas." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158 (D.C. Cir. 1999); *see also* 8 U.S.C. § 1201(i) (barring judicial review of visa revocation). Indeed, none of Plaintiff's cited cases involve the Government's decision to deny or revoke a visa. *See* Opp. 16–17 (citing cases related to driver's licenses, high school suspensions, and public prohibitions on purchasing liquor). Plaintiff therefore cannot premise a procedural due process challenge on the alleged revocation of a visa.

### C.  Plaintiff has been afforded sufficient process.

The Court need not consider whether Plaintiff has been afforded sufficient process because he has failed to establish that he has been deprived of any constitutionally protected liberty interests by his inclusion on the December 2023 Supplemental Report. *See supra* pp. 11–16; Mot. 13–17. Regardless, Plaintiff proffers no justification for requiring more process here.

Plaintiff cannot premise the relevant private interest on Section 353's visa and admissibility restrictions, because, as repeatedly explained, Plaintiff is not currently subject to any visa or

admissibility restrictions pursuant to Section 353—and indeed was subject to such restrictions for only approximately one week.

Plaintiff's attempted comparison to the petition process for sanctions issued by the Office of Foreign Assets Control ("OFAC") is inapt. As Plaintiff recognizes, OFAC is required by regulation to provide certain post-deprivation procedures. *See* Opp. 19 (citing 31 CFR § 501.807). There is no such regulatory requirement here. Moreover, sanctions issued by OFAC generally involve economic and trade sanctions. *See, e.g.*, *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 159 (D.C. Cir. 2003). Here, in contrast, persons included on a Section 353 report are no longer even subject to visa and admissibility restrictions. Finally, to the extent an individual seeks the equivalent of a "document that identifies unclassified information underlying [his] designation," as OFAC provides, Opp. 19, an individual may submit a request pursuant to the Freedom of Information Act ("FOIA"). Alternatively, where an individual has filed suit, as here, the individual may be entitled to an administrative record.

Accordingly, this Court should dismiss Plaintiff's procedural due process claim for failure to state a claim.

## CONCLUSION

This Court should dismiss Count III (Procedural Due Process), Count IV (Vagueness), and Count V (5 U.S.C. § 555(b)); as well as Plaintiff's request for injunctive relief "[o]rder[ing] Defendants to issue a written, reasoned decision on Plaintiff's pending delisting petition" and "[d]irect[ing] the State Department to issue a public statement rescinding [Plaintiff's] designation." Am. Compl., Requested Relief ¶¶ 81, 83.

Dated:  March 12, 2025               YAAKOV M. ROTH
                                     Acting Assistant Attorney General

STEPHEN M. ELLIOTT
Assistant Director

/s/ *Cassandra M. Snyder*
Cassandra M. Snyder
D.C. Bar #1671667
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 451-7729
Fax: (202) 616-8460
Email: Cassandra.M.Synder@usdoj.gov

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

On March 12, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, District of Columbia, using the electronic case filing system of the court.

/s/ *Cassandra Snyder*
Cassandra Snyder